

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

FORM 26(f)
REPORT OF PARTIES' PLANNING MEETING

| | |
|---|---|
| NITOR V. EGBARIN and JANET J. EGBARIN<br>　　　　Plaintiffs<br><br>V.<br><br>LEWIS, LEWIS & FERRARO, LLC,<br>SCOTT F. LEWIS, CLAUDE J. PICARD<br>and PAULINE M. PICARD<br>　　　　Defendants | : CIVIL ACTION<br>: NO. 300 CV1043 (JCH)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: SEPTEMBER 24, 2004 |

Date Complaint Filed: June 7, 2000

Date of Defendants Appearances:

June 28, 2000 - Lewis, Lewis & Ferraro and Scott F. Lewis

July 13, 2000 - Picard

Date Amended Complaint Filed: September 14, 2004


1.  Pursuant to Fed. R. Civ. P 16(b), 26(f) and D. Conn. L. Civ. R. 38, a conference was held on September 16, 2004. The participants were:

Plaintiffs Nitor and Janet Egbarin, pro se plaintiffs


Thomas J. Hagarty, Jr. for defendants Lewis, Lewis & Ferraro and Scott Lewis.

Joseph V. Meaney for defendants Claude and Pauline Picard.

I.   **Certification**

Undersigned counsel certify that, after consultation with their clients, they have discussed the nature and basis of the parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case and, in consultation with their clients, have developed the following proposed case management plan.  Counsel further certify that they have forwarded a copy of this report to their clients.

II.  **Jurisdiction**

Subject Matter Jurisdiction

This court has jurisdiction pursuant to 18 U.S.C. Section 1964(c), 15 U.S.C. Section 1692k and 28 U.S.C. Section 1331. This court has jurisdiction over the non-federal claims under principles of pendent jurisdiction.

B.   **Personal Jurisdiction**

This court has personal jurisdiction over the defendants by

virtue of personal service pursuant to Rule 5 of the Local Rules of Civil Procedure and Rule 4 of the Federal Rules of Civil Procedure.

**III. Brief Description of Case (The parties could not agree to a joint description of the case and therefore submit separate descriptions.)**

**A.   Plaintiff's Description**

This case arises out of a real estate closing transaction and in subsequent civil actions over the real estate transaction.

The plaintiffs were purchasing a partially constructed residential property in Bloomfield from the defendants. The Picard defendants were the owners, developers and builders of the development property.

The defendants, in the attempt to stem the losses in the development property, devised a scheme to circumvent the lending requirement of the financial institution that financed the sale of the development property. The scheme

was to obtain an additional sum of money in excess of the bank approved appraised value of the development property.

In furtherance of the scheme, the defendants created various instruments including a note and second mortgage deed which the defendants illegally failed to disclose in the HUD-1 Settlement Statement. Thus, the defendants failed to disclose to the bank that were receiving $30,000 more than the bank approved appraised value of $300,000 for the development property.

This excess amount of $30,000 was covered up as a note and second mortgage.

The defendants first brought a foreclosure action to foreclose on the $30,000 second mortgage. In the foreclosure action, the defendants misled the court by filing false affidavits and making false statements about the nature of the $30,000.

The defendants filed then brought prejudgment remedy

attachment action to collect on the promissory note only and to attach other assets of the defendants. The defendants again filed more false affidavits which misled the court in issuing orders that froze the plaintiff's law practice business. Consequently, the plaintiff sustained irreversible loss of business and clientele.

While still unable to collect on their note and second mortgage, the defendants then filed a grievance complaint based on charges that were never substantiated. However, based on the defendants false testimony, plaintiff's law license was eventually suspended, which finally killed off plaintiff's law practice business.

The manner the defendants misled the courts are more particularly described below in the plaintiffs' claims.

**B.   Defendant's Description**

On May 23, 1994, the pro se plaintiffs entered into an agreement entitled "Amendment to Purchase and Sale Agreement" with the defendants Claude and Pauline Picard

which amended an earlier document entitled "Purchase, Sale and Lease Agreement." Pursuant to the amendment, the Picards agreed to sell their home at 8 North Cliff Drive in Bloomfield to the plaintiffs for $300,000. The purchase price was to be paid by way of a first mortgage in the amount of $270,000 with a lending institution and a second mortgage and note in the amount of $30,000 to be held by the sellers, Mr. and Mrs. Picard. It is believed that the lending institution was aware of the existence of this second mortgage.

On or about May 31, 1994, the pro se plaintiffs purchased the property from the defendants Claude and Pauline Picard, who were represented at the closing by the defendants Lewis, Lewis & Ferraro and Scott F. Lewis. At the closing, the pro se plaintiffs signed documents for a second mortgage and promissory note in the amount of $30,000. The defendants, Claude and Pauline Picard, later filed suit against the pro se plaintiffs when no payments were made on said promissory note. In that lawsuit, the Picard defendants were represented by the co-defendants Lewis, Lewis & Ferraro and

Scott F. Lewis. In that lawsuit, the plaintiffs contested the validity of the promissory note. On or about November 4, 1998, the Picard defendants obtained a judgment against the plaintiffs in the New Britain Superior Court on the promissory note. The plaintiffs' claims arise out of that real estate transaction and the subsequent civil action on the promissory note.

**Claims of Plaintiff(s):**

**ILLEGAL CONDUCT & STATEMENTS**

The defendants did not disclose in the HUD-1 Statement as required by law, the existence of the second mortgage and note or that they were holding an equity interest of $30,000 in the property over and above the bank approved appraised value and purchase price of $300,000.

By failing to make these disclosures the defendants violated the instructions issued by the U.S. Department of Housing and Urban Development, 24 CFR Pt 3500 App. A, pages 57-58, for the HUD-1 statement, which require that if a seller takes a note from a buyer, this financing arrangement should

be listed on lines 204-209 and in lines 506-509 of the HUD-1.

Also, although 18 U.S.C. § 1012 requires the sellers to disclose their equity interest in the property financed, the defendants, Mr. and Mrs. Picard, did not disclose their equity interest of $30,000, in violation of this statute.

The HUD-1 which was accurately prepared contains these pertinent statements, under penalty of perjury, that:
1. the plaintiffs "paid deposit money" of "$30,000" towards purchase of the property,
2. the sellers, Mrs. Picard, received "deposit money" of "$30,000"
3. the "contract sales price" was "$300,000," and,
4. the lender gave a loan in the amount of "$270,000" for the balance of the contract sales price.

The HUD-1 did not contain any second mortgage.

Nevertheless, the defendants subsequently filed several

false affidavits that swore to the following facts that contradict the above sworn statements in the HUD-1:

1. "Mr. & Mrs. Egbarin did not pay either my wife or myself the sum of $30,000 towards the purchase price of the home. Instead they gave us a Promissory Note which was secured by a second mortgage on the premises."

2. "Mr. Egbarin knows that neither he nor his wife ever paid my wife or I the balance of the purchase price in the amount of $30,000."

3. "[the plaintiffs] after being approved by Sanborn for the Mortgage Loan, still needed the sum of $30,000 to purchase the premises from my wife and me for $300,000."

4. "[the plaintiffs] inquired of my wife and me if they could borrow the sum of $30,000.00 from us."

5. "[o]n may 31, 1994, my wife and I sold and transferred the premises to the [plaintiffs] for the sum of $300,000 of which $270,000.00 came from the [plaintiffs'] loan with Sanborn and $30,000 was by way of the Note with us."

Also, at a court hearing, the defendant, Scott Lewis boldly misrepresented to the court that:

    1. "... there was deposit or earnest money of $30,000 on the RESPA. And that deposit in earnest money was by promissory note, and my clients' affidavit says that."

In a grievance action the defendants initiated against Mr. Egbarin, the court found among other things, that:

1. the HUD-1 Settlement Statement does not refer to the second mortgage or note for $30,000 and,
2. the affidavits the defendants submitted in the collection actions omitted to mention the $30,000 payment the defendants received from the plaintiffs.

Finally, in one document the defendants were compelled to produce in this matter, the Picard defendants admitted receiving $29,400 from the plaintiffs by the first week in May 1994, as part of the $30,000 down payment referred to in the HUD-1.

Thus this admission, the court's findings and the sworn statement in the HUD-1 all clearly establish that the defendants submitted false evidence - affidavits, statements and testimony, to procure court orders that destroyed the plaintiff's business.

**RICO**

The acts described hereinabove of the defendants as aforesaid repeatedly violated the provisions of 18 U.S.C. § 1341, in that the defendants, having devised schemes to defraud the plaintiffs and a federally regulated financial institution and to obtain funds by false pretenses, repeatedly caused to be placed in authorized depositories for mail to be delivered by the U.S Post Office and received there-from, various documents and things;

The acts described hereinabove of the defendants as aforesaid repeatedly violated the provisions of 18 U.S.C. § 1343, in that the defendants, having devised schemes to defraud the plaintiffs and a federally regulated financial

institution and obtain funds by false or fraudulent pretenses, repeatedly caused to be transmitted by telephone lines both verbally and digitally, sounds and signals in interstate commerce;

The acts described hereinabove of the defendants as aforesaid repeatedly violated the provisions of 18 U.S.C. § 1344, in that the defendants knowingly executed schemes on dates and in the manner set forth in the complaint, to obtain funds from the plaintiffs and a federally regulated financial institution by false and fraudulent pretenses.

The acts described hereinabove of the defendants as aforesaid repeatedly violated the provisions of 18 U.S.C. § 1503, in that the defendants knowingly devised and executed schemes on dates and in manner set forth in the complaint, to obtain funds from plaintiffs by false and fraudulent pretenses and in obstruction of justice.

These acts of the defendants constitute racketeering activity in violations of 18 U.S.C. § 1962(c).

**CUTPA:**

Furthermore, the actions of the defendants as aforesaid were in fact continuing and fraudulently concealed and were fraudulent, immoral, unethical, oppressive or unscrupulous.

The aforesaid actions of the defendants are in violation of the Connecticut General Statutes, §42-110b et seq., and offend public policy as it has been established by common law of the state of Connecticut and particularly the tort of misrepresentation, fraud and violation of Professional Rules of Conduct:

(1). Rule 3.3(a)(1)(making false statements to a tribunal),

(2). Rule 3.3(a)(2)(failing to disclose material fact to a tribunal),

(3). Rule 3. 3.3(a)(4)(offering false evidence a lawyer knows to be false),

(4). Rule 4.1(2)(failing to disclose a material fact to a third person (bank)),

(5). Rule 8.4(1)(violating the rules of professional

conduct),

(6). Rule 8.4(2)(committing a criminal act),

(7). Rule 8.4(3)(engaging in conduct involving dishonesty, fraud, deceit or misrepresentation) and,

(8). Rule 8.4(4)(engaging in conduct that is prejudicial to the administration of justice).

**OTHER CLAIMS**

These facts further implicate violations of the Fair Debt Collections Practices Act (FDCPA), tortuous interference with business expectancy, fraud, negligent and intentional infliction of emotional distress.

**B.  Defenses and Claims (Counterclaims, Third Party Claims, Cross Claims) of Defendant(s):**

The defendants jointly deny all the plaintiffs' material allegations against them and affirmatively assert that the validity of the promissory note referred to in the complaint has been conclusively established by the Superior Court, with no appeal having been filed and that all claims of fraud, misstatements, etc. raised in this lawsuit have been

previously litigated in the Superior Court and have been rejected by the Superior Court. Thus, the plaintiffs' claims are barred by the doctrine of issue preclusion. The plaintiffs' claims are also barred by the applicable statutes of limitations.

The defendants specifically deny any claims of fraud, misrepresentation or other tortious or improper conduct with respect to the HUD-1 Statement. To the extent that the HUD-1 Statement did not clearly list the existence of the second mortgage, it is the defendants' contention that this was the result of a clerical error by the bank's attorneys who prepared the document. The defendants simply overlooked this apparent clerical error at the time of the closing as, apparently, did the plaintiffs. To the extent that the plaintiffs' claim that the defendants acted in a tortious, fraudulent, or otherwise illegal fashion with respect to the HUD-1 agreement, said claims were raised or could have been raised in the superior court action to enforce the promissory note. The plaintiff is attempting to relitigate issues in the federal court which were the subject of

previous litigation in the state court.

C.  **Defenses and Claims of Third Party Defendant(s):**

Not applicable.

IV. **Statement of Undisputed Facts:**

Counsel and the pro se plaintiffs certify that they have made a good faith attempt to determine whether there are any material facts that are not in dispute. The parties state that they are unable to agree at this point as to any undisputed material facts.

V.  **Case Management Plan:**

A.  **Standing Order on Scheduling in Civil Cases**

The parties request modification of the deadlines in the Standing Order in Civil Cases as follows: The parties request until March 1, 2005 for the completion of discovery and scheduling conference with the court.

B.  **Scheduling conference with the Court**

A status/scheduling conference has not been scheduled.

C.  **Early Settlement Conference**

1. The parties certify that they have considered the desirability of attempting to settle the case before undertaking significant discovery or motion practice. Settlement is unlikely at this time.

2. The parties do not request an early settlement conference.

D.  **Joinder of Parties and Amendment of Pleadings**

1. The parties agree to the deadlines contained in the Standing Order on pretrial deadlines.

E.  **Discovery**

1. The parties anticipate that discovery will be needed on all subjects and issues fairly arising out of the claims of plaintiffs'' complaint and: the real estate transaction in question, including the preparation and execution of the various documents and the subsequent lawsuit to enforce the promissory note.

2.  All discovery, including depositions of expert witnesses pursuant to Fed. R. Civ. P. 26(b)(4), will be commenced by September 24, 2004 and completed March 1, 2005.

3.  Discovery may not be conducted in phases.

4.  The parties anticipate that the plaintiff(s) will require a total of five depositions of fact witnesses and that the defendant(s) will require a total of five depositions of fact witnesses. The depositions will commence by September 24, 2004 and be completed by March 1, 2005.

5.  The parties will request permission to serve more than 25 interrogatories.

6.  Plaintiffs may call expert witnesses at trial. Plaintiffs will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) by January 1, 2005. Depositions

of any such experts will be completed by March 1, 2005.

7. Defendants do not intend at present to call expert witnesses at trial. Defendants will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) by February 1, 2005. Depositions of such experts will be completed by March 1, 2005.

8. Any party who has a claim or counterclaim for damages will provide a damages analysis by April 1, 2005.

### F. Dispositive Motions

Dispositive motions will be filed on or before June 1, 2005.

### G. Joint Trial Memorandum

The joint trial memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be filed 60 days following court decision on dispositive motions.

### VI. TRIAL READINESS

The case will be ready for trial by August 1, 2005.

The undersigned pro se parties certify that they will cooperate with all other parties, counsel of record and the Court to promote the just, speedy and inexpensive determination of this action.

Plaintiff:_____    Date:_____
        Nitor Egbarin


Plaintiff:_____    Date:_____
        Janet Egbarin

As officers of the Court, undersigned counsel agree to cooperate with each other and the Court to promote the just, speedy and inexpensive determination of this action.


Defendants LEWIS LEWIS & FERRARO LLC and SCOTT F. LEWIS

By _____    Date: 9/24/04
   Thomas J. Hagarty, Jr.


Defendants CLAUDE J. PICARD and PAULINE M. PICARD

By _____    Date: 9/24/04
   Anthony C. DeFilippis

_____
Joseph V. Meaney Jr.

596869_1.DOC