UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

NITOR V. EGBARIN and            :       CIVIL ACTION
JANET J. EGBARIN                   NO. 3:00-CV-1043-JCH
            Plaintiffs,
V.                                 :

LEWIS, LEWIS & FERRARO, LLC      :
SCOTT F. LEWIS, CLAUDE J. PICARD
AND PAULINE M. PICARD
           Defendants.         :       MAY 27, 2005

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS LEWIS, LEWIS & FERRARO, LLC AND SCOTT F. LEWIS' MOTION FOR SUMMARY JUDGMENT

## PRELIMINARY STATEMENT

Pursuant to Rule 56 of the Federal and Local Rules of Civil Procedure, the defendants Lewis, Lewis & Ferraro, LLC and Scott F. Lewis submit this memorandum of law in support of their motion for summary judgment on the July 26, 2004 amended complaint. In further support of their motion, they have submitted a Local Rule 56(a)1 statement of undisputed facts and an appendix of exhibits. For the reasons set forth below, the Court should grant the defendants' motion.

## BACKGROUND

### I. STATEMENT OF FACTS

The plaintiffs, Nitor and Janet Egbarin, have commenced this action against Lewis, Lewis & Ferraro, LLC, Scott F. Lewis, Claude J. Picard and Pauline M. Picard seeking compensation related to a real estate transaction and subsequent lawsuits

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

related thereto.  (See generally First. Am. Compl.)  The undersigned defendants

provided legal representation to the codefendants, the Picards (the sellers), in relation

to the real estate transaction and subsequent lawsuits.  (Ex. A, Lewis Aff., ¶  12).

On or about September 16, 1992, the plaintiffs entered into an agreement

entitled "Purchase, Sale and Lease Agreement" with the codefendants for the lease and

ultimate purchase of 8 North Cliff Drive in Bloomfield, Connecticut.  (Id. at ¶ 14).  This

agreement set a purchase price of $330,000 and an October 1, 1993 closing date, with a

right to an extension until April 1, 1994.  (Id. at ¶ 15).  Prior to the closing, the plaintiffs

were to occupy the premises and pay the codefendants a $2,100 monthly lease

payment, $500 of which would be credited toward a deposit or down payment on the

purchase price.  (Id. at ¶ 16).  In addition, the plaintiffs were to pay an additional $10,000

toward the down payment.  (Id. at ¶ 17).  The contract also provided that only the

$10,000 would be refunded if the plaintiffs were unable to purchase the property for any

reason, including the failure to obtain a mortgage.  (Id. at ¶ 18).[1]

On or about May 23, 1994, the plaintiffs and codefendants entered into a second

agreement entitled "Amendment to Purchase and Sale Agreement" in which the

purchase price was adjusted to $300,000 and which also provided that none of the

deposit money paid as of that date (approximately $25,000) would be applied toward the

sales price.  (Ex. A, Lewis Aff., ¶ 20).  Scott Lewis, drafted this second agreement.  (Id.

at ¶ 21).

---

[1] See also September 16, 1992 "Purchase, Sale and Lease Agreement" attached hereto as Exhibit B.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

The amended agreement was necessary because the mortgage company from which the plaintiffs were attempting to secure a loan appraised the property at $300,000. (Id. at ¶ 22). Thus, the company would not approve the mortgage unless the purchase price was $300,000. (Id. at ¶ 23). Mr. Picard, however, was unwilling to reduce the purchase price but agreed to renegotiate the deal such that the price was reduced to $300,000, but the plaintiffs would not receive credit for or a refund of the previous down payment. (Id. at ¶ 24). The Picards and the plaintiffs signed this agreement, which superceded the earlier agreement and the plaintiffs thereafter obtained a $270,000 mortgage through Sanborn Corporation. (Id. at ¶ 25). [2] The plaintiffs did not have the additional $30,000 to complete the sale and thus, an additional agreement was reached whereby the Picards would take back a promissory note and a second mortgage in that amount. (Ex. A. Lewis Aff., ¶ 27). Scott Lewis drafted the note which was executed at the closing on or about May 31, 1994. (Id. at ¶ 28).[3]

The plaintiffs thereafter failed to make the required payments on the note. (Ex. A, Lewis Aff., ¶ 30). Thus, in March, 1995, the undersigned defendants, on behalf of the Picards, instituted a foreclosure action in the Hartford Superior Court. (Id. at ¶ 31). They subsequently filed a second lawsuit in December 1995 in the New Britain Superior Court. (Id. at ¶ 32). The second action was a suit on the note which ultimately resulted

---

[2] See also May 23, 2994 "Amendment to Purchase and Sale Agreement" attached hereto has Exhibit C.
[3] See also copy of executed note attached hereto as Exhibit D.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

in a judgment against the Egbarins in July 1998. (Id. at ¶ 33). The original foreclosure

action in the Hartford Superior Court was withdrawn. (Id. at ¶ 34).

In defending the two lawsuits, the Egbarins attempted to circumvent the portion

of the amended agreement which stated that the Picards were entitled to keep the

previously paid deposits and that they would not be credited toward the purchase price

by virtue of a clerical error in the "Settlement Statement" (also known as the HUD-1).

(Id. at ¶ 35). Specifically, while that statement correctly showed the contract price to be

$300,000 and a first mortgage of $270,000, it also showed, in error, "deposit or earnest

money" of $30,000. (Id. at ¶ 36). In fact, the settlement statement should have reflected

a second mortgage of $30,000. (Id. at ¶ 37). This error apparently resulted from an

oversight on the part of the bank's attorneys who prepared the statement. The

undersigned had nothing to do with the preparation of the document and did not notice

the error at closing. (Id. at ¶ 38). There was no effort to mislead the bank and, in fact,

the bank, despite the error, was fully aware of the second mortgage and therefore knew

that the loan was 100 percent financed. (Id. at ¶ 39). Specifically, a copy of the bank's

file, which was subpoenaed in one of the previous lawsuits, included a copy of the

$30,000 promissory note. (Id.). In addition, it is undisputed that Nitor Egbarin himself

avised the bank regarding the second mortgage and note prior to the closing. See

Statement of Undisputed Facts, ¶ 29.

Nonetheless, the plaintiffs advanced the above-stated defenses relative to the

suits on the note. (Id. at ¶ 25). Specifically, they attempted to claim in defending the

- 4 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103


Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

previous lawsuits that the HUD Settlement Statement was evidence that they had, in fact, paid $30,000 as a deposit and that there was no valid promissory note or second mortgage. Ex. A, Lewis Aff. at ¶ 40. In doing so, they challenged the veracity of all of the defendants with respect to statements made in court and affidavits submitted thereto. Ex. A., Lewis Aff. at ¶ 41; Statement of Undisputed Facts, ¶ 40. They specially pleaded fraud and misrepresentation, as well. See Statement of Undisputed Facts, ¶ ¶ 25, 37. They also asserted a counterclaim on grounds of alleged fraud and misrepresentation. Id. In fact, Mr. Egbarin referenced his special defenses on many occasions during the course of his 12/8/95 deposition relative to the first Picard v. Egbarin matter. See Statement of Undisputed Facts, ¶ 39. Further, both he and his attorney accused the Picards and Mr. Lewis of fraud and misrepresentation relative to the real estate transaction on several occasions during the deposition and thereafter. Id. at ¶ ¶ 39, 40. These defenses and challenges were thereby adjudicated and ultimately rejected by virtue of the judgment entered against the Egbarins. Ex. A, Lewis Aff. at ¶ 42.

    In the course of conducting discovery in the previous lawsuit, the undersigned discovered that the income tax returns the plaintiffs produced to both his clients and the financial institutions were fraudulent in that they were never filed with the IRS. (Id. at ¶ 44)[4] In other words, the plaintiffs had used false tax returns in order to secure their

---

[4] Despite the plaintiffs' claims in his First Amended Complaint that he never provided the defendants with these tax returns and that they were in fact filed (See ¶¶ 88-91), he testified to the contrary during the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

loans.  After consulting with the codefendants, the undersigned filed a grievance complaint against the plaintiff, Nitor Egbarin, who had been a licensed, practicing attorney at the time.  (Id. at ¶ 45).  This complaint ultimately resulted in Mr. Egbarin's disbarment.  (Id. at ¶ 46).

The defendant, Lewis, Lewis & Ferraro, LLC is a small, West Hartford based law firm.  (Id. at ¶ 44)  Both the firm and Attorney Lewis specialize in personal injury litigation, divorce and family law, wills, probate and elder law, bankruptcy and real estate.  (Id. at ¶¶ 7, 9) The firm and Attorney Lewis, one of its members, do not specialize in, nor do they routinely practice, debt collection.  (Id. at ¶ 10).   To the extent the plaintiffs' characterizations of the underlying lawsuits as debt collection can even be given any credence, they were merely incidental to the real estate transaction at issue.  (Id. at ¶43).

## II. THE PLAINTIFFS' CLAIMS

The First Amended Complaint contains seven "claims" or counts.  The first count, entitled "RICO, Racketeering Influenced Corrupt Organization" alleges that, in relation to the aforementioned transaction and/or subsequent lawsuits, "[t]he defendants,

---

presentment hearing while under oath.  See Statewide Grievance Committee v. Nitor Egbarin, 61 Conn. App. 445, 449-50, cert. denied, 225 Conn. 949 (2001).  ("At the hearing, the defendant also testified and stated before the trial court that at the time of the property closing in 1994, his taxes were not paid in full because of a personal arrangement with the Internal Revenue Service (IRS).  When the court asked the defendant about the details of his arrangement with the IRS, the defendant avoided answering the question and failed to provide the court with any information or details.  The defendant further revealed to the court that he also failed to pay his 1994 taxes.")  See also Id. at 454 ("The court found that there was clear and convincing evidence demonstrating that the defendant misrepresented relevant facts to Sanborn and to the Picards by submitting his federal income tax returns without disclosing that he did not pay his income taxes . . . .")

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

associated together amongst each other in the manner described in this complaint directed the affairs of a racketeering enterprise established for the commission of criminal acts, which acts constitute a pattern of racketeering activity and which pattern of racketeering activity consists of two or more criminal acts committed by the defendants" in violation of 18 U.S.C. § 1962(c ).  (First Am. Compl., First Count, ¶¶ 100-101).

The second count, entitled "FDCPA, Fair Debt Collection Practices Act" alleges that the undersigned defendants misrepresented material facts or failed to disclose necessary information in an effort to collect a debt in violation of 15 U.S.C. § 1692. (First Am. Compl., Second Count, ¶¶ 150-152).

The third count, entitled "fraud", alleges that the defendants committed fraud through misrepresentations of material fact and/or nondisclosure, thereby obtaining state court judgments against the plaintiffs.  (First Am. Compl., Third Count, ¶¶ 158-159).

The fourth count, entitled "intentional infliction of emotional distress," alleges that certain claimed acts of the defendants "were intentionally engaged in to inflict pain, mental anguish and emotional distress upon the plaintiffs."  (First Am. Compl., Fourth Count, ¶ 164).

The fifth count, entitled "negligent infliction of emotional distress," alleges that certain claimed acts of the defendants "negligently inflicted pain, mental anguish and

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

emotional distress upon the plaintiffs." (First Am. Compl, Fifth Count, ¶ 168).[5]

The sixth count, entitled "tortious interference with business expectancy," alleges that the defendants tortiously interfered with the plaintiff's law practice thereby causing its demise and total destruction. (First Am. Compl., Sixth Count, ¶ 172).

The seventh count, entitled "CUTPA, Connecticut Unfair Trade Practices Act," alleges that certain claimed acts of the defendants were "fraudulent, immoral, unethical, oppressive or unscrupulous" and thereby violated Conn. Gen. Stat. § 42-110b (CUTPA). (First Am. Compl., Seventh Count, ¶¶178-179).

## STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b). See Szekeres v. Schaeffer, 304 F. Supp. 2d 296, 304 (D. Conn. 2004). A genuine issue of fact only exists when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome if the substantive law renders them so. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). If the moving party carries his burden, the party opposing summary judgment "may not rest upon mere allegations or denials," rather the opposing party must "set forth specific facts showing that there is a genuine issue for trial." Fed.

---

[5] It is important to note that the fifth, sixth and seventh counts of the First Amended Complaint constitute newly alleged causes of action. The original Complaint, dated May 23, 2000, did not include claims for negligent infliction of emotional distress, tortious interference with business or CUTPA.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

R. Civ. P. 56(e).  Thus, to defeat a motion for summary judgment, the nonmoving party

"must do more than simply show that there is some metaphysical doubt as to the

material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586

(1986).  "If the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-50.

<u>**ARGUMENT**</u>

I.    **RICO**

   A.    <u>**The Plaintiffs' RICO Claim Fails to State a Claim Upon Which Relief**</u>
         <u>**Can Be Granted**</u>

   A civil RICO (18 U.S.C. §§ 1961-1968) action may be brought by a private

plaintiff where the statutes' substantive provisions have been violated.  <u>Sedima v.</u>

<u>IMREX</u>, 105 S. Ct. 3275, 3278 (1985).  These provisions are very involved and

stringent, however, and proof that they have been violated is necessarily difficult to

achieve. In <u>Schmidt v. Fleet Bank</u>, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998), for

example, the District Court aptly observed that:

> In considering RICO claims, courts must attempt to achieve
> goals consistent with Congress's goal of protecting
> legitimate businesses from infiltration by organized crime. As
> one district court within this Circuit has stated Civil RICO is
> an unusually potent weapon – the litigation equivalent of a
> thermonuclear device. Because the mere assertion of a
> RICO claim . . . has an almost inevitable stigmatizing effect
> on those named as defendants . . . , courts should strive to
> flush out frivolous RICO allegations at an early stage of the
> litigation.  To this end, a court's focus must be to ensure that
> RICO's severe penalties are limited to enterprises consisting
> of more than simple conspiracies to perpetuate the acts of

- 9 –

> racketeering.  Thus courts must always be on the lookout for
> the putative RICO case that is really nothing more than an
> ordinary fraud case clothed in the Emperor's trendy garb.

(internal quotations and citations omitted).  See also O'Malley v. NYC Transit Authority,

896 F.2d 704, 705 (2d. Cir. 1990) (plaintiff's RICO claim was nothing more than 'a

simple claim made by an employee that he was wrongfully terminated.').  In sum, RICO

was intended to target ongoing criminal enterprises and was not intended to create a

federal remedy for garden variety state law fraud claims such as those alleged here.

The plaintiffs' claim is based upon a purported violation of 18 U.S.C. 1962 (c )

which provides that:

> It shall be unlawful for any person employed by or
> associated with any enterprise engaged in, or the activities
> of which affect interstate or foreign commerce, to conduct or
> participate, directly, or indirectly, in the conduct of such
> enterprise's affairs through a pattern of racketeering activity
> or collection of unlawful debt.

It is clear that the plaintiffs' assertion that "[t]he defendants, associated together

amongst each other in the manner described in this complaint directed the affairs of a

racketeering enterprise established for the commission of criminal acts, which acts

constitute a pattern of racketeering activity and which pattern of racketeering activity

consists of two or more criminal acts committed by the defendants" amounts to nothing

more than a bald legal conclusion and is thus insufficient when properly analyzed under

RICO's stringent pleading and proof requirements.  Specifically, in order to successfully

make a claim for a civil RICO violation under § 1962 (c ), plaintiffs must plead and prove

- 10 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

conduct (1) of an enterprise (2) through a pattern of racketeering activity.  Viacom v. Harbridge, 20 F.3d 771, 778 (1994).  The plaintiffs here have not accomplished this, nor can they.  As such, the defendants are entitled to judgment as a matter of law with respect to the RICO claims.

> **1)    Enterprise**

Enterprise is defined in § 1961(4) as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  "In interpreting this statute, the Supreme Court has defined a RICO enterprise 'as a group of persons associated together for a common purpose of engaging in a common cause of conduct.'" Schmidt, 16 F. Supp. 2d a t 349 (citation omitted).  "The existence of a RICO enterprise is 'proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" Id.  (citation omitted).

In this case, the plaintiffs presumably are claiming that the Picard defendants and the Lewis defendants operated as an "association-in-fact."  In determining whether the members of a purported association-in-fact functioned as a unit, the "courts in the Second Circuit must look to the 'hierarchy, organization, and activities' of the association."  First Nationwide Bank v. Gelt Funding Corp., 820 F.Supp. 89, 98 (S.D.N.Y. 1993) aff'd. 27 F.3d 763 (2d Cir. 1994).  The courts have also addressed the issue of when an attorney, or law firm, such as the Lewis defendants, can be considered members of an "enterprise" for purpose of RICO.  Utilizing the Supreme

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Court's decision in <u>Reeves v. Ernst & Young</u>, 1135 Ct. 1163 (1993), the courts have held that attorneys do not become members of an "enterprise" simply by providing legal advice or services; rather it is necessary to show that the attorney participated in the operation or management of the enterprise itself.  <u>Handeen v. Lemaire</u>, 112 F.3d 1339, 1347- 48 (8th Cir. 1997).  In applying all of these standards to the allegations of the complaint and the undisputed facts of this case as they apply to the Lewis defendants, it is clear that the plaintiffs have not, nor can they, prove the existence of a RICO enterprise.  To the contrary, there is no issue of fact with regard to the conclusion that there was no RICO enterprise.

The plaintiffs have not even attempted to describe the "hierarchy, organization or activities" of the enterprise in their complaint, and even if they had, no facts would support such a conclusion. The substantive allegations of the complaint are, to say the least, unclear as to the nature of the alleged misconduct of the defendants.  At most the plaintiffs seem to claim that the defendants acted in concert to cause them to sign a $30,000 promissory note in connection with the purchase of residential real estate and to then obtain a judgment on the note.  This is despite the undisputed fact that the plaintiffs readily agreed to the note and second mortgage and in fact declined to have it reviewed by their attorney.  <u>See</u>  Statement of Undisputed Facts, ¶ 20.  Further, had the plaintiffs not defaulted in their obligations under the note, there would have been no need for the subsequent lawsuits and judgments.  The defendants certainly were in no position to know at the time the note was executed that the plaintiffs would shirk their

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

financial responsibility thereby necessitating follow-up legal action.  There are, therefore, no facts to support the plaintiffs' claims here.  Even if there were, they would not rise to the level of an "enterprise" existing independently of the alleged acts of misconduct.

Further, the undisputed facts here reveal nothing more than the simple provision of legal services by the Lewis defendants to the Picards.  Specifically, the Lewis defendants represented the Picards at the real estate closing and in the subsequent lawsuits which arose when the plaintiffs failed in their obligations related thereto. This does not amount to an "enterprise" for purposes of RICO.  Handeen, 112 F. 3d at 1347-48.

### 2)    Pattern of Racketeering Activity

The plaintiffs also have the burden of proving facts which support the finding of a "pattern of racketeering" i.e., at least two criminal acts of racketeering (as defined in § 1961(1)) within a two year period.  18 U.S.C. § 1961(5).  The plaintiffs must prove the essential elements of these so-called "predicate acts" or "offenses" in order to withstand a motion for summary judgment.  Here, the plaintiffs' RICO claims against the undersigned defendants are predicated on alleged violations of 18 USC § 1341 (mail fraud), 18 USC § 1343 (wire fraud), 18 USC §1344 (bank fraud) and 18 USC §1503

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

(obstruction of justice).[6]  The plaintiffs have not, nor can they, however, sustain their burden of proving any of these alleged violations.

> **a)     18 U.S.C. §§1341 and 1343 (mail fraud and wire fraud)**

To prove mail and wire fraud, the plaintiffs must establish (1) the existence of a scheme to defraud (2) the defendants' knowing and willing participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme. Bernstein v. Misk, 948 F. Supp. 228, 238 (E.D.N.Y. 1997).  Further, proof of mail fraud requires the plaintiffs to identify "the content of the items marked and specify how each of the items was false and misleading.  Id. at 239. There is a similar burden with respect to wire fraud.  Id. at 245.  Further, wire fraud requires proof of interstate wire transmissions; intrastate wire transmissions are insufficient.  Neder v. United States, 119 S.Ct. 1827, 1839 (1999).

A scheme to defraud under the mail and wire fraud statutes involves the use of "dishonest methods or schemes and usually signifies the deprivation of something of value by trick, deceit, chicane or overreaching." McNally v. United States, 107 S.Ct. 2875, 2881 (1987).  Further, the scheme must be predicated upon misrepresentations or omissions which are reasonably calculated to deceive persons of ordinary

---

[6] It is important to note that the plaintiffs have specifically charged the codefendants with violating 18 U.S.C. § 1012 (Department of Housing and Urban Development Transactions) as a predicate offense under RICO.  Although they have not done so specifically against the undersigned, they do charge the undersigned with knowledge of the alleged problems giving rise to their §1012 claim.  18 U.S.C. § 1012 , however, is not included on the exhaustive list of predicate offenses under RICO and thus alleged violations thereof cannot form the basis for the plaintiffs' claims in this regard.  Miranda v. Ponce Federal Bank, 948 F.2d 41, 48 (1st Cir. 1991).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

intelligence.  Walters v. First Tennessee Bank N.A., 855 F.2d 267, 273 (6th Cir. 1988)

cert. denied 109 S.Ct. 1344 (1989).  Misconduct which does not involve deceit of the

plaintiff does not amount to mail or wire fraud.  Central Distributors of Beer, Inc. v.

Conn., 5 F.3d 181, 184 (6th Cir. 1993) cert. denied 114 S.Ct. 2678 (1994).

    The plaintiffs have not, nor can they, prove any specific facts to support their

claim of mail or wire fraud.  Despite the unfounded innuendo regarding a "scheme" to

defraud, the undisputed facts clearly demonstrate nothing more than a real estate

transaction involving the plaintiffs and the defendants wherein the plaintiffs clearly

agreed to the terms and conditions of an agreement which they are now attempting to

characterize as a "scheme to defraud."  A review of all of the pertinent paperwork and

the undisputed facts reveals nothing more than an inconsequential error, committed by

the bank's attorneys (who are not parties to this action), regarding the existence of the

second mortgage to which the plaintiffs agreed and about which the bank was aware.

In this regard, there is no dispute that the plaintiff himself advised the bank about the

second mortgage and note prior to the closing.  Further, the bank's file, retrieved under

subpoena in 1995, included a copy of the second mortgage/promissory note.  Thus,

although there was an error in the HUD-1 form, there certainly was nothing false or

misleading about it because all of the relevant parties to the transaction possessed the

knowledge to ascertain the error.

    Even if this were not the case, and the plaintiff did not advise the bank regarding

the note and the bank's file did not include the note, the fact remains that the plaintiff

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

was not and could not be damaged as a result of the clerical error.  Rather, the HUD-1 form exists for the benefit of and to protect lending institutions and thus, only the bank would have standing to claim a violation of this statute because only the bank could be damaged as a result.  Indeed, this is precisely the opinion offered by Laura Borelli, the plaintiffs' own expert in this regard.  See Borelli dep. Pp. 46-52.  (Attached hereto as Ex. E).  Specifically, Ms. Borelli opined that the plaintiff was complicit in preparing the HUD-1 incorrectly and that she evaluated damages from the perspective of the lender.  Id.

Further, this so-called "scheme" defense was already raised by the plaintiffs and rejected by the Connecticut Superior Court in the action on the note.  See e.g. Sundwall v. Reiner & Reiner, 1997 WL 117286 (D. Conn.) (defining doctrines of res judicata and collateral estoppel, as discussed in more detail, infra).  (Sundwall attached hereto as Exhibit I).

Finally, the plaintiffs have not, nor can they, prove any interstate use of wire communication, fax or telephone.  The plaintiffs and the bank are and were domiciled in Connecticut.  (First Am. Compl. ¶ 6)  Thus, the undisputed facts demonstrate that the alleged predicate offenses of mail and wire fraud have no place here.

### b)     18 U.S.C. 1344 (bank fraud)

18 U.S.C. § 1344 provides, in relevant part, that:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice --
> **(1)** to defraud a financial institution; or

- 16 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

> **(2)** to obtain any of the moneys, funds, credits, assets,
> securities, or other property owned by, or under the custody
> or control of, a financial institution, by means of false or
> fraudulent pretenses, representations, or promises,

is guilty of bank fraud. Here, there is no question regarding the fact that the Lewis

defendants did not obtain any money from a financial institution. (Ex. A, Lewis Aff., ¶

47). To the contrary, only the plaintiffs dealt with and obtained money from the bank.

Further, and notwithstanding the foregoing, the plaintiffs have not established that they

were injured by any alleged bank fraud and therefore have not established the

necessary proximate cause nexus. Again, the plaintiffs' claim of bank fraud appears to

be based upon the clerical error in the HUD-1 settlement statement. However, as

demonstrated above, the bank was well aware, in part due to Mr. Egbarin's making it so,

that there was a second mortgage and note prior to the closing. If that were not the

case, it would seem that the bank might have a claim for fraud against Mr. Egbarin as

he was the recipient of the funds. Thus, the plaintiffs claimed violation on 18 U.S.C.

§ 1344 fails as a matter of law and thus does not constitute a predicate act for the

purposes of RICO.

### c)    18 U.S.C. 1503 (obstruction of justice)

The plaintiffs also claim that the defendants engaged in obstruction of justice

under 18 U.S.C. § 1503. This claim appears to be based upon the plaintiffs' untrue and

previously litigated assertion that the state court judgment entered against them was

obtained through some type of fraud. This allegation, even if true, cannot establish a

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

predicate act under RICO because it does not involve obstruction of justice in a federal proceeding.  Obstruction of justice in a state court proceeding cannot be considered a "predicate act" under RICO for purposes of establishing a pattern of racketeering. O'Malley, 896 F.2d at 707.  Thus, as with the other alleged predicate offenses, this too must fail as a matter of law.

### B.  The Plaintiffs' RICO Claim is Barred by the Applicable Statute of Limitations

Even if the plaintiffs could sustain their burden of proving the stringent requirements set forth by the RICO statutes, their claim would nonetheless fail.  It is well settled that the statute of limitations for a civil RICO action is four years from the date the RICO claim accrued. Agency Holding Corporation v. Malley-Duff, 107 S.Ct. 2759, 2767 (1987).  A RICO cause of action accrues when the plaintiff suffers an injury, and the statute of limitations begins running when the plaintiff discovers or should discover the injury.  In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 58 (2d. Cir. 1998).

The plaintiffs' alleged RICO claim is predicated upon a real estate transaction which closed on May 31, 1994 and lawsuits related thereto which were commenced in March 1995 and December 1995.  The undisputed facts clearly demonstrate that the plaintiffs and their counsel, Attorney Lindbergh were well aware that their RICO claims had accrued in 1995.  See Statement of Undisputed Facts, ¶¶ 37-40.  In other words, they specifically knew of the injury/ies they are claiming to have sustained by the RICO violations alleged here in 1995.  Id.  Mr. Egbarin was deposed on December 8, 1995

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

relative to the Picard v. Egbarin matter.  Id.  On several occasions throughout the

course of the deposition, Mr. Egbarin and his attorney accused Scott Lewis and the

Picards of the same acts of alleged fraud and misrepresentation that they now submit

as grounds for their RICO claim here.  Id.  In addition, as reflected in the relevant

deposition testimony as well as the pleadings in both prior cases, the plaintiffs specially

pleaded fraud and misrepresentation in their answer to the Picards' complaints.  Id.

Moreover, and perhaps more importantly, they counterclaimed on the basis of fraud and

misrepresentation, thereby claiming damages as a result of the alleged, but

unsubstantiated, offenses.  Id.  Thus, this action, initiated on May 23, 2000 well exceeds

the four year RICO statute of limitations.

In sum, the plaintiffs' RICO claim fails as a matter of law because they have not

and cannot prove the existence of an enterprise, they have not and cannot prove a

single predicate act, let alone two, and because their action is barred by the four year

statute of limitations.

## II.     FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA")

### A.     **The Plaintiffs' FDCPA Claim Fails to State a Claim Upon Which Relief Can Be Granted Because the Undersigned Defendants Are Not "Debt Collectors"**

The plaintiffs next allege that the Lewis defendants' actions in attempting to

collect upon the promissory note on behalf of their clients and obtaining a judgment

related thereto amount to violations of the Fair Debt Collections Practices Act (15

U.S.C. § 1692e and 15 U.S.C. § 1692d(2)).  15 U.S.C. § 1692e, entitled "False or

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

misleading representations," provides, in relevant part, that "[a] <u>debt collector</u> may not use any false, deceptive or misleading representation or means in connection with the collection of any debt."  (emphasis added).  Likewise, 15 U.S.C. § 1692d provides, in relevant part, that "[a] <u>debt collector</u> may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:  (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader."  (emphasis added).

It is well settled that the FDCPA applies only to "debt collectors."  <u>Neff v. Capital Acquisitions & Management Co.</u>, 352 F.3d 1118 (Ill. 2003).  The Second Circuit has recognized that an attorney who <u>regularly</u> collects debts is a debt collector within the meaning of the Act.  <u>Cacace v. Lucas</u>, 775 F. Supp. 502, 504 (D. Conn. 1990).  It has defined "regular" in accordance with it's common meaning of "steady or uniform in course, practice or occurrence; not subject to unexplained or irrational variation."  <u>Id</u>. Factors to consider in assessing whether an attorney regularly collects debts are 1) the volume of the attorney's collection activities, 2) the frequency of the use of the collection letter in question and 3) whether or not there is found to be an ongoing relationship between the attorney and the collection agency he represented.  <u>Id</u>.

Against this backdrop, and despite the plaintiffs' claims to the contrary, the Lewis defendants do not qualify as "debt collectors" under the act.  According to the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

undisputed facts, Lewis, Lewis & Ferraro, LLC is a small, West Hartford based law firm comprised of two attorneys, including Scott Lewis.  Both the firm and Attorney Lewis specialize in personal injury litigation, divorce and family law, wills, probate and elder law, bankruptcy and real estate.  Neither the firm nor Attorney Lewis practice debt collection and they do not hold themselves out as debt collection attorneys through their advertisements in the yellow pages and on the web.  (Ex. A, Lewis Aff., ¶ 10)  Rather, their involvement in attempting to collect on the note upon which the plaintiffs defaulted was merely incidental to the real estate transaction at issue.  In other words, because Attorney Lewis had represented the Picards in the underlying transaction, he agreed to represent them in the subsequent matters related thereto.  The representation was a continuum of the attorney-client relationship that arose out of one of the firm's specialties, real estate.

Indeed, the "volume" of the firm's collections activities is difficult, if not impossible, to quantify because it is such a miniscule number.  Further, while there are no allegations regarding the use of a collection letter here, it bears noting that the Lewis defendants do not have or use any such "form" letter as would appear to be envisioned by the act.   Finally, the Picards are not a collection agency.  Thus, the plaintiffs have no cause of action under the Act by virtue of the fact that the undersigned defendants are not "debt collectors."  See Schroyer v. Frankel, 197 F.3d 1170 (Ohio 1999) (holding that attorney and law firm were not "debt collectors" where only 2 percent of the firm's overall practices included debt collection, where the firm did not employ individuals full

- 21 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Hᴀʟʟᴏʀᴀɴ
& Sᴀɢᴇ LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

time for purposes of collecting cases, and only 7.9 percent of the firm's cases were debt

collection cases, the majority of which had the firm representing the debtor).  <u>Accord

Camara v. Fleury</u>, 285 F. Supp. 2d 90 (D. Mass. 2003); <u>Nance v. Petty, Livingston,

Dawson & Devening</u>, 881 F. Supp. 2d 90 (W.D.Va. 1994).

     **B.  <u>The Plaintiffs' FDCPA Claim is Barred by the Doctrine of Res
Judicatat and/or Collateral Estoppel and/or the Doctrine of Privilege</u>**

It is settled law that the doctrine of res judicata:

> . . . bars relitigation of the same claims between the same
> parties or their privies after the matter has once been
> resolved by a court of competent jurisdiction . . . . Broadly
> speaking, a final judgment on the merits bars further claims
> by the parties or their privies based on the same cause of
> action . . . . The related doctrine of collateral estoppel is a
> narrower doctrine that bars a party from relitigating an issue
> which has previously been decided against him in a
> proceeding in which he had a full and fair opportunity to
> litigate that point . . . . Collateral estoppel applies when an
> issue was necessarily and conclusively determined in a prior
> proceeding and the party to be bound had a full and fair
> opportunity to litigate the issue.

<u>Sundwall</u>, 1997 WL 117286 (D. Conn).  Both doctrines are directly applicable to the

plaintiffs' FDCPA claim.

Res judicata, also known as claim preclusion, "applies if the earlier decision was

(1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case

involving the same parties or their privies and (4) involving the same cause of action."

<u>Klein & Vibber, P.C. et al. v. Collard & Roe, P.C. et. Al</u>, 3 F. Supp. 2d 167, 171 (1998)

(citation and internal quotations omitted).  This doctrine expressly provides that the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Hᴀʟʟᴏʀᴀɴ
& Sᴀɢᴇ LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

parties to the prior suit and their privies "are thereafter bound not only as to every matter which was offered and received to sustain or defeat the claim and demand, but as to any other admissible matter which might have been offered for that purpose." FDIC v. Lenz, 323 F. Supp.2d 342, 346 (2004) (citation and internal quotations omitted).

The claims presented by the plaintiffs in this action are the same as those they presented, or those which should have been presented, in defending the prior actions. These claims arise out of the same real estate transaction and subsequent suits related thereto. The parties to this litigation are almost identical, except for the addition of the undersigned defendants who were privy to the state court actions by virtue of their representation of the Picards and their being subject to motions for contempt. See Klein, 3 F. Supp. 2d at 171 (dismissing action based on res judicata where issues presented in both suits arose from the same agreement and where parties were almost identical). Finally, it is undisputed that there was a final judgment on the merits in the prior proceeding. Thus, the doctrine of res judicata should serve as a bar to the plaintiffs' claim here.

The narrower doctrine of collateral estoppel is also applicable to the plaintiffs' FDCPA claim. This claim is predicated upon allegations that the undersigned defendants obtained a judgment against the plaintiffs in the New Britain Superior Court action by utilizing false statements and false affidavits. These exact claims were presented to the court in defense of the preceding actions by the Picards against the Egbarins which led up to the 1998 judgment. See Statement of Undisputed Facts,

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

¶¶39, 40.  The entry of the judgment against the Egbarins, therefore, necessarily and conclusively determined these issues in favor of the defendants.  There is no question that these issues were raised and rejected once before.  The plaintiffs cannot therefore use this forum to relitigate the same issues.

Even if this were not the case and the plaintiffs were raising the alleged false statements to the tribunal for the first time, their claim would still fail as a matter of law. It is well established that statements made during ongoing judicial or quasijudicial proceedings are cloaked with privilege.  Peytan v. Ellis, 200 Conn. 243 (1986).  This rule of law derives from the principle that "in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements."  Id. at 246.  Again, the trial court, as arbiter of credibility, rejected the Egbarins' challenges during the prior proceedings by virtue of the judgment rendered against them.  Regardless, because the unsupported allegations giving rise to the FDCPA claim derive from statements made to the tribunal in prior proceedings, they are privileged.  Id.

## C.  The Plaintiffs' FDCPA Claim is Barred by the Applicable Statute of Limitations

Section 1692k(d) of the FDCPA specifically provides that aggrieved debtors may file suit "within one year from the date on which the violation occurs."  See also Padilla v. Payco General American Credits, Inc., 161 F. Supp. 264, 273 (S.D.N.Y. 2001).  The plaintiffs' FDCPA claim is predicated upon allegations that the undersigned defendants

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

obtained a judgment against them in the New Britain Superior Court action by utilizing false statements and false affidavits.  Even if these allegations had merit, which they do not, the plaintiffs' action in this regard is untimely.  The lawsuit which resulted in the judgment in question was initiated in December 1995 and judgment entered in July, 1998.  Further, the plaintiffs' previously raised accusations of false statements and affidavits were clearly delineated in their October 25, 1996 motions for contempt against Scott Lewis and Claude Picard.  See Statement of Undisputed Facts, ¶¶ 39, 40.  Thus, this timetable clearly demonstrates that this action, initiated in May, 2000, well exceeded the applicable statute of limitations.  The undisputed facts demonstrate that Mr. Egbarin and his attorney knew at the time of his December 8, 1995 deposition of the basis for the FDCPA claims being asserted here.  This knowledge was reiterated in the plaintiffs' motions for contempt.  Thereafter, judgment entered in July, 1998, which would be the absolute latest date by which the claim could have accrued, by well over one year.  The plaintiffs' FDCPA claim is therefore time barred.

In sum, the plaintiff's FDCPA claim fails as a matter of law because the Lewis defendants are not and were not "debt collectors," it is barred by the doctrine of collateral estoppel and/or privilege and it is time barred.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

III.    **FRAUD**

  A.  **The Plaintiffs' Fraud Claim Is Barred By the Doctrine of Collateral Estoppel and/or the Doctrine of Privilege**

The plaintiffs next reiterate their RICO and FDCPA claims in their common law fraud cause of action, i.e. that the defendants fraudulently induced them to sign a promissory note and thereafter obtained a judgment against them through fraudulent means.  They further appear to include the grievance claim as a basis for their claim of fraud.  Specifically, they allege that "[t]he defendants obtained several court judgments to the detriment of the plaintiffs, upon the misrepresentations of material fact and or nondisclosure by the defendants that were made to induce the reliance by the courts and the plaintiffs."  (First Am. Compl., Third Count, ¶¶ 158-159).

To the extent the plaintiffs' fraud claim is predicated upon alleged misstatements of fact during the preceding actions by the Picards against them, the defendants' rely upon their arguments regarding the doctrine of collateral estoppel and/or the doctrine of privilege set forth in the preceeding section and will refrain from reiterating them here. Likewise, the same legal analysis applies to the extent the plaintiffs' fraud claim relates to allegations underlying the real estate transaction and procurement of the note (i.e. plaintiffs were fraudulently induced into agreement).  Indeed, in defending the preceding actions, the plaintiffs specially pleaded, testified about, and/or otherwise raised the defenses of fraud, misrepresentation and the fact that the second mortgage was not listed on the HUD-1 settlement statement.  <u>See</u> Statement of Undisputed Facts, ¶ ¶ 37-

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Hᴀʟʟᴏʀᴀɴ
& Sᴀɢᴇ ʟʟᴘ

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

40.[7]  Thus, the plaintiffs' claims of fraud were already litigated and rejected by virtue of

the July 1998 judgment against them.  They are thus barred by the doctrine of collateral

estoppel.  Sundwall, 1997 WL 117286 (D.Conn.).

In addition, to the extent the plaintiffs' fraud claim is predicated upon the filing of

and prosecution of the grievance against Mr. Egbarin, the defendants rely on the

doctrine of absolute privilege as a bar to the claim.  "[T]he act of filing a grievance with

the Statewide Grievance Committee is privileged, and the person who files the

complaint is immune from tort liability arising out of not only his statements during the

proceeding but also out of the filing of the complaint."  Pantaleo v. Raviski, 1997 WL

94103 (Conn. Super) citing Field v. Kearns, 43 Conn. App. 265 (1996).  (Pantaleo

Attached hereto as Ex. F).  Thus, even if there was any factual basis for the plaintiffs'

claims of fraud relating to the grievance the defendants were forced to file, which there

is not,[8] the plaintiffs are precluded from basing a fraud claim on the filing of the

grievance and the proceedings relating thereto by virtue of the doctrine of privilege.

### B.  The Plaintiffs' Fraud Claim is Barred by the Applicable Statute of Limitations

The three year statute of limitations set forth in Connecticut General Statutes §

52-577 governs actions sounding in fraud.  Krondes v. Norwalk Savings Society, 53

Conn. App. 102, 113 (1999).  The plaintiffs' claim of fraud is based upon allegations that

---

[7] See also Argument IB infra wherein Mr. Egbarin's December 8, 19905 deposition testimony is discussed in detail.
[8]   See n.2, supra.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

the defendants fraudulently induced them to sign a promissory note on or before May

31, 1994 and thereafter obtained a judgment against them through fraudulent means.

This judgment arose from two preceding lawsuits, the first of which was filed in March

1995.  As demonstrated above, the undisputed facts clearly indicate that the plaintiffs

and their counsel at the time, were well aware of the allegations of fraud that form the

basis for their fraud claims here on <u>December 8, 1995</u>, <u>at the latest</u>.  Mr. Egbarin's

testimony, the commentary by his lawyer and the previously filed special defenses could

not be more clear.  Thus, this action which commenced on May 23, 2000 well exceeds

three years from December 8, 1995.  The plaintiffs' common law fraud claim is therefore

time barred.

**IV.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

> **A.    <u>The Plaintiffs' Intentional Infliction of Emotional Distress Claim Fails
> to State a Claim Upon Which Relief Can be Granted</u>**

The Connecticut Supreme Court has recently enunciated that:

> Liability for intentional infliction of emotional distress has
> been found only where the conduct has been so outrageous
> in character, and so extreme in degree, as to go beyond all
> possible bounds of decency, and to be regarded as
> atrocious, and utterly intolerable in a civilized community.
> Generally, the case is one in which the recitation of the facts
> to an average member of the community would arouse his
> resentment against the actor, and lead him to exclaim,
> "Outrageous!"

<u>Morrissey v. Yale University</u>, 268 Conn. 426, 428 (2004) (citation, internal quotation

marks and brackets omitted).  The following four elements must be proven before

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

_Halloran_
_& Sage_ LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

liability for intentional infliction of emotional distress will attach: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendants' conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Hartmann v. Gulf View Homeowners Association, Inc., 88 Conn. App. 290, 294 (2005) (citation and internal quotation marks omitted). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." Id. at 295.

Here, the plaintiffs claim that the defendants' actions relative to the real estate transaction and subsequent lawsuits related thereto amount to intentional infliction of emotional distress. A review of the plaintiffs' allegations in this regard, as well as the undisputed facts, demonstrate nothing more than that the Lewis defendants represented their clients in a basic real estate transaction which included the plaintiffs signing a promissory note on which they later defaulted. Thereafter, the Lewis defendants represented these same clients in their efforts to collect on the note and also pursued a grievance action against Nitor Egbarin on their clients' behalf. In short, the allegations and undisputed facts reveal that the Lewis defendants were simply doing their job within normal and accepted parameters. This is hardly "Outrageous!" and simply does not rise to the level of intentional infliction of emotional distress. The plaintiffs' claim in this regard, therefore, must fail as a matter of law.

- 29 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

**B.** **The Plaintiffs' Intentional Infliction of Emotional Distress Claim is Barred by the Applicable Statute of Limitations**

"The applicable statute of limitations period for a claim of intentional infliction of emotional distress is three years." DeCorso v. Watchtower Bible & Tract Society of New York, Inc., 78 Conn. App. 865, 873 (2003). All of the acts giving rise to the plaintiffs' claim for intentional infliction of emotional distress fall well outside that time frame. Specifically, the real estate transaction at issue occurred in 1994 and the lawsuits relating thereto were commenced in 1995. The plaintiffs and their counsel were well aware of the claims which form the basis for this cause of action, namely alleged fraud and misrepresentation by the defendants, by December 8, 1995, at the latest. See detailed discussion in this regard, infra. Again, May 23, 2000 well exceeds the applicable statute of limitations for this claim. Thus, there is no question that the plaintiffs' intentional infliction of emotional distress cause of action is untimely.

**V.    NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**A.** **The Plaintiffs' Negligent Infliction of Emotional Distress Claim Fails to State a Claim Upon Which Relief Can be Granted**

The four elements for negligent infliction of emotional distress are "1) the defendant's conduct created an unreasonable risk of causing emotional distress; 2) the plaintiff's emotional distress was foreseeable; 3) the emotional distress was severe enough that it might result in illness or bodily harm; and 4) the defendant's conduct was the cause of the plaintiff's distress." Carroll v. Allstate Insurance Co., 262 Conn. 433, 444 (2003). As indicated in the previous section, the Lewis defendants' conduct in this

– 30 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

case amounted to nothing more than the appropriate performance of their job functions. They followed a natural, logical and reasonable progression of steps related to representing their clients in a real estate transaction, securing a promissory note from the plaintiffs, and seeking to enforce the note once the plaintiffs defaulted thereon.  This type of normal and expected behavior simply does not rise to the level of negligent infliction of emotional distress and the plaintiffs' claim must fail in this regard.  See e.g. Shattuck v. Town of Stratford, 2005 WL 941415 (Conn. Super.) (granting defendants motion for summary judgment where defendants, in performing their job functions rationally and reasonably, were not liable for negligent infliction of emotional distress). (Attached hereto as Ex.G).  The plaintiffs' claim in this regard, therefore, must fail as a matter of law.

### B.  The Plaintiffs' Negligent Infliction of Emotional Distress Claim is Barred by the Applicable Statute of Limitations

The two year statute of limitations set forth in Conn. Gen. Stat. § 52-584 governs claims for negligent infliction of emotional distress.  Lounsbury v. Camby, 2004 WL 303687 (Conn. Super.)  (Attached hereto as Ex. H).  As reiterated on several occasions above, this action was initiated in May, 2000, well beyond two years from the alleged incidents giving rise to the plaintiffs' claims.  Specifically, the real estate transaction and closing took place in 1994 and the subsequent lawsuits were initiated in 1995.  The plaintiffs and their counsel knew on or about December 8, 1995, at the latest, of their

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

unsubstantiated belief that the defendants had committed fraud and misrepresentation. The plaintiffs' claims in this regard, therefore, are time barred.[9]

## VI.    TORTIOUS INTERFERENCE WITH BUSINESS

### A.  The Plaintiffs' Tortious Interference With Business Claim Fails to State a Claim Upon Which Relief Can be Granted

Tortious interference with business, also known as "tortious interference with contractual relations," is proven only upon satisfaction of the following five elements:  (1) the existence of a contractual or beneficial relationship; (2) the defendants' knowledge of that relationship, (3) the defendants' intent to interfere with the relationship; (4) the interference was tortuous; and (5) a loss suffered by the plaintiff that was caused by the defendants' tortious conduct.  Collum v. Chapin, 40 Conn. App. 449, 452 (1996).  The plaintiffs' claim in this regard is that the defendants' alleged actions caused "the demise and total destruction" of Nitor Egbarin's law practice.  (First Am. Compl., Sixth Count, ¶ 172).

More specifically, the plaintiffs contend that during the action on the note, the trial court, on March 24, 1996, granted a PJR attachment relative to, among other things, the plaintiff's law practice.  (First Am. Compl. ¶¶ 75-76).  The plaintiff was thereafter "compelled" to inform his clients accordingly and his existing clientele transferred their

---

[9] It also bears noting that the plaintiffs only injected this cause of action in their First Amended Complaint dated July 26, 2004.  Thus, even if the plaintiffs' could establish that the cause of action was timely as of 2000, there would still exist a relation back question as this was not part of the original action.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

cases and his referral business "dried up."  (<u>Id</u>. at ¶¶ 77-78).  Even if proven, however, this does not give rise to a valid tortious interference with business cause of action.

First, the impetus behind the defendants' actions in bringing a lawsuit was to enforce the promissory note upon which the plaintiffs' had defaulted and nothing more. The defendants were not driven by an intent to interfere with the plaintiff's law practice, a fact which the plaintiffs have not and cannot dispute.  (Ex. A, Lewis Aff., ¶ 48) Second, even if the actions relating to the action on the note could be considered "interference," there are no facts to support the conclusion that this interference was tortious.  The defendants were doing their job and they did so in accordance with the rules of legal practice in Connecticut.  Indeed, to the extent this alleged interference is predicated upon alleged misstatements during the PJR hearing, the plaintiffs cannot, as a matter of law, establish the tortious requirement because of the privilege, as described above, which attached to the proceeding.  Third, and quite importantly, the plaintiffs have not and cannot establish that the demise of the law practice was a result of the PJR attachment.  In point of fact, the plaintiff's law practice evaporated by virtue of his own actions which resulted in his disbarment.

Thus, the plaintiffs' claim of tortious interference with business must fail as a matter of law.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

**B. The Plaintiffs' Tortious Interference With Business Claim is Barred by the Applicable Statute of Limitations**

The three year statute of limitations set forth in Conn. Gen. Stat. § 52-577 governs claims for tortious interference with business. As indicated above, the plaintiffs' claim in this regard derives from the fact that on March 24, 1996 the trial court issued a PJR attachment relative to Nitor Egbarin's law practice which ultimately resulted in it's demise. This action, however, was not commenced until May 23, 2000, well over three years from the date the attachment was issued. Thus, the plaintiffs' tortious interference with business claim is time barred.[10]

**VII.    CUTPA**

**A. The Plaintiffs' CUTPA Claim Fails to State a Claim Upon Which Relief Can be Granted**

The plaintiffs' final claim is that the defendants' actions relative to the real estate transaction and following lawsuits amount to a violation of "CUTPA,"Connecticut's Unfair Trade Practices Act, (Conn. Gen. Stat. § 42-110). As with the previous claims, this too must fail as a matter of law.

The provisions of CUTPA have been held to apply to the conduct of attorneys, but only in certain limited circumstances. Haynes v. Yale New Haven Hospital, 243 Conn. 17, 34-5(1997). Specifically, the Connecticut Supreme Court has expressly stated that "[t]he noncommercial aspects of lawyering – that is, the representation of the

---

[10] It also bears noting that the plaintiffs only injected this cause of action in their First Amended Complaint dated July 26, 2004. Thus, even if the plaintiffs' could establish that the cause of action was timely as of 2000, there would still exist a relation back question as this was not part of the original action.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

client in a legal capacity – should be excluded [from CUTPA] for public policy reasons." Id. at 35 (internal quotations and citations omitted).  This apt conclusion is premised upon the recognized importance of not "interfer[ing] with the attorney's primary duty of robust representation of the interests of his or her client."  Mozzochi v. Beck, 204 Conn. 490, 497 (1987).

As demonstrated above, the allegations of the plaintiffs' complaint and the undisputed facts reveal nothing more than a situation wherein the Lewis defendants were providing proper legal representation relative to a real estate transaction to their clients.  In other words, all of the plaintiffs' claims relate to the Lewis defendants representation of the Picards in a legal capacity.  This clearly falls outside of the applicability of CUTPA to attorneys and thus, the plaintiffs' claims in this regard must fail as a matter of law.  Haynes, 243 Conn. at 17.

## B. The Plaintiffs' CUTPA Claim is Barred by the Applicable Statute of Limitations

Section 42-110g(f) of the Connecticut General Statutes provides for a three year statute of limitations for CUTPA actions.  As repeatedly emphasized above, the plaintiffs' claims in this action relate to a 1994 real estate transaction and to 1995 lawsuits related thereto.  Their complaint, dated May 23, 2000, clearly exceeds the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

three year statute of limitations for CUTPA by at least one year.  As such, the plaintiffs'

claims in this regard are time barred.[11]

## CONCLUSION

WHEREFORE, for the foregoing reasons, the defendants' motion for summary

judgment should be granted.


**THE DEFENDANTS,
LEWIS, LEWIS & FERRARO, LLC,
AND
SCOTT F. LEWIS**


By_____
                Thomas J. Hagarty, Jr.
                Fed. Bar. #ct 05259
                Laura Pascale Zaino
                Fed. Bar #ct 19353
                HALLORAN & SAGE  LLP
                One Goodwin Square
                225 Asylum Street
                Hartford, CT  06103
                (860) 522-6103

---

[11] It also bears noting that the plaintiffs only injected this cause of action in their First Amended Complaint dated July 26, 2004.  Thus, even if the plaintiffs' could establish that the cause of action was timely as of 2000, there would still exist a relation back question as this was not part of the original action.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## <u>CERTIFICATION</u>

This is to certify that on this 27th day of May, 2005, I hereby mailed a copy of the foregoing to:

Joseph Meaney, Esq.
Cranmore, Fitzgerald & Meaney
49 Wethersfield Avenue
Hartford, CT 06114-1102

Nitor V. Egbarin and
Janet J. Egbarin
28 Ely Place
Simsbury, CT 06070

Nitor V. Egbarin and
Janet J. Egbarin
P.O. Box 230421
Hartford, CT 06123-0421

_____
Thomas J. Hagarty, Jr.
Laura Pascale Zaino

683660_1.DOC

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105