UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
NITOR V. EGBARIN and            :     CIVIL ACTION
JANET J. EGBARIN                :     NO. 3:00-cv-01043-JCH
    Plaintiffs,            :
                                :
v.                              :
                                :
LEWIS, LEWIS & FERRARO, LLC,    :
SCOTT F. LEWIS, CLAUDE J. PICARD :
and PAULINE M. PICARD           :     MAY 27, 2005
    Defendants.            :
_____:

**LOCAL RULE 56(a)1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

    Pursuant to Rule 56(a)1 of the Federal Rules of Civil Procedure, the defendants submit this statement of material facts in support of their motion for summary judgment, dated June 1, 2005. The defendants contend that the following facts are undisputed:

    1.    The defendant, Scott F. Lewis is a licensed, practicing attorney in the State of Connecticut who, at all relevant times, has been a member of the defendant Lewis, Lewis & Ferraro, L.L.C., Attorneys at Law. Ex. A, Lewis Aff. ¶¶ 4, 7.

    2.    Lewis, Lewis & Ferraro, L.L.C. is a small, West Hartford, Connecticut based law firm. Ex. A, Lewis Aff. ¶ 8.

3. Both Scott F. Lewis and Lewis, Lewis & Ferraro specialize in personal injury litigation, divorce and family law, wills, probate and elder law, bankruptcy and real estate. Ex. A, Lewis Aff. ¶ 9.

4. Neither Scott F. Lewis or Lewis, Lewis & Ferraro specialize in, or routinely practice, debt collection. Ex. A., Lewis Aff. ¶ 10.

5. Scott F. Lewis, in his capacity as a member of Lewis, Lewis & Ferraro, provided legal representation to Claude and Pauline Picard related to a real estate transaction involving a property known as 8 North Cliff Drive, Bloomfield, Connecticut. Ex. A., Lewis Aff. ¶ 12.

6. Claude and Pauline Picard were the sellers of the property and Nitor and Janet Egbarin were the purchasers. Ex. A., Lewis Aff. ¶ 13.

7. On or about September 16, 1992, the Egbarins entered into an agreement entitled "Purchase, Sale and Lease Agreement" with the Picards for the lease and ultimate purchase of 8 North Cliff Drive. Ex. A., Lewis Aff. ¶ 14.

8. This agreement set a purchase price of $330,000 and an October 1, 1993 closing date with a right to an extension until April 1, 1994. Ex. A., Lewis Aff. ¶ 15; Ex. B, September 16, 1992 "Purchase, Sale and Lease Agreement."

9. The plaintiff, Nitor Egbarin, participated in the drafting of this agreement and consented to its terms. Ex. C, Pl. 4/13/05 Dep. Trans., pp. 40-41.

10. Prior to the closing, the Egbarins were to occupy the premises and pay the Picards a monthly lease payment of $2,100, $500 of which would be credited toward the down payment on the purchase price. Ex. A., Lewis Aff. ¶ 16; Ex. B, September 16, 1992 "Purchase, Sale and Lease Agreement."

11. In addition, the Egbarins were to pay an additional $10,000 toward the down payment on the purchase price. Ex. A., Lewis Aff. ¶ 17; Ex. B, September 16, 1992 "Purchase, Sale and Lease Agreement."

12. The contract also provided that only the $10,000 would be refunded if the plaintiffs were unable to purchase the property for any reason, including the failure to

obtain a mortgage. Ex. A., Lewis Aff. ¶ 18; Ex. B, September 16, 1992 "Purchase, Sale and Lease Agreement."

13.     On or about May 23, 1994, the Egbarins and the Picards entered into a second agreement entitled "Amendment to Purchase and Sale Agreement" in which the purchase price was adjusted to $300,000 and which also provided that none of the deposit money paid as of that date (approximately $25,000) would be applied toward the sales price. Ex. A., Lewis Aff. ¶ 19; Ex. D, "Amendment to Purchase and Sale Agreement."

14.     This second agreement was necessary because the mortgage company from which the Egbarins were attempting to secure a loan appraised the property at $300,000. Ex. A., Lewis Aff. ¶ 21.

15.  Thus, the company would not approve the mortgage unless the purchase price was $300,000. Ex. A., Lewis Aff. ¶ 22.

16.     Mr. Picard was unwilling to reduce the purchase price and thus the deal was renegotiated such that the price was reduced to $300,000 but the Egbarins would not receive credit or a refund of the previous downpayment. Ex. A., Lewis Aff. ¶ 23; Ex. D, "Amendment to Purchase and Sale Agreement."; Ex. C, Pl. 4/13/05 Dep. Trans. p. 80.

17.     The Picards and Egbarins signed the second agreement, which superceded the earlier agreement, and the Egbarins thereafter obtained a $270,000 mortgage through Sanborn Corporation. Ex. A, Lewis Aff. ¶ 24; Ex. C, Pl. 4/13/05 Dep. Trans. p. 87.

18.  The Egbarins did not have the additional $30,000 to complete the sale and thus, an additional agreement was reached whereby the Picards would take back a promissory note and a second mortgage in that amount. Ex. A, Lewis Aff. ¶ 25; Ex. C, Pl. 4/13/05 Dep. Trans. p. 82.

19.     Scott Lewis drafted the note which the Egbarins and Picards signed at the closing, which occurred on or about May 31, 1994. Ex. A, Lewis Aff. ¶ 26; Ex. C, Pl. 4/13/05 Dep. Trans. p. 99.

20.     The plaintiffs readily agreed to the note and second mortgage and, in fact, declined to have it reviewed by their attorney. Ex. C, Pl. Dep. Trans. pp. 95-99.

21. The Egbarins thereafter failed to make the required payments on the note. Ex. A, Lewis Aff. ¶ 27.

22. As a result, in March, 1995 Scott Lewis, on behalf of the Picards, instituted a foreclosure action against the plaintiffs in the Hartford Superior Court. Ex. A, Lewis. Aff. ¶ 28.

23. Thereafter, in December, 1995, Scott Lewis, on behalf of the Picards, filed a second lawsuit in the New Britain Superior Court. Ex. A, Lewis Aff. ¶ 29.

24. The second action was a suit on the note which ultimately resulted in a judgment against the Egbarins in July, 1998. Ex. A, Lewis Aff. ¶ 30.

25. In defending these suits, the plaintiffs raised the defenses of fraud, misrepresentation and the fact that the second mortgage was not listed on the HUD-1 Settlement Statement. Ex. A, Lewis Aff. ¶¶ 31, 36; Ex. C, Pl. 4/13/05 Dep. Trans. pp. 114, 127, 133, 134, 136, 151; Ex. E (Ex. 7, 8 and 9 from Pl. 4/13/05 Dep. Trans.).

26. The HUD-1 "Settlement Statement" correctly showed the contract price to be $300,000 and a first mortgage of $270,000. It also showed, in error, however, "deposit or earnest money" of $30,000. Ex. A, Lewis Aff. ¶ 32; Ex. F, HUD-1 "Settlement Statement."

27. The HUD-1 "Settlement Statement" should have reflected a second mortgage of $30,000. Ex. A, Lewis Aff. ¶ 33.

28. Scott Lewis had nothing to do with the drafting of the HUD-1 "Settlement Statement" and did not notice the error at the closing. Ex. A, Lewis Aff. ¶ 34.

29. The plaintiff, Nitor Egbarin, advised the lending institution about the note and second mortgage prior to the closing. Ex. C, Pl. 4/13/05 Dep. Trans. p. 100.

30. A copy of the second mortgage/promissory note was included in the bank's file when produced on or about September 14, 1995 pursuant to a subpoena Scott Lewis served during the course of the subsequent lawsuits. Ex. A, Lewis Aff. ¶ 35.

31. Thus, despite the clerical error on the HUD-1 "settlement statement," the bank was aware of the second mortgage and promissory note. Ex. A, Lewis Aff. ¶ 39; Ex. C, Pl. 4/13/05 Dep. Trans. p.100.

32. The subsequent lawsuits pertaining to the note were merely incidental to Scott Lewis's representation of the Picards in the preceding real estate transaction. Ex. A, Lewis Aff. ¶ 39.

33. In the course of conducting discovery in the previous lawsuits, Scott Lewis discovered that the income tax returns the Egbarins produced to the Picards and the bank were fraudulent in that they were never filed with the IRS. Ex. A, Lewis Aff. ¶ 40.

34. After consulting with the Picards, Scott Lewis filed a grievance complaint against Mr. Egbarin, who had been a licensed, practicing attorney at the time. Ex. A, Lewis, Aff. ¶ 41.

35. This complaint ultimately resulted in Mr. Egbarin's disbarment. Ex. A, Lewis Aff. ¶ 42.

36. Mr. Egbarin appealed his disbarment. <u>Statewide Grievance Committee v. Nitor Egbarin</u>, 61 Conn. App. 445, <u>cert. denied</u>. 225 Conn. 949 (2001) and the Connecticut Appellate Court affirmed the trial court's decision.

37. In the course of defending the previous lawsuits, the Egbarins specially pleaded the defense of fraud and counterclaimed on the basis of fraud and misrepresentation. Ex. A, Lewis Aff. ¶¶ 31, 36; Ex. C, Pl. 4/13/05 Dep. Trans. pp. 114, 127, 133, 134, 136, 151; Ex. E, Ex. 7-9 from Pl. 4/13/05 Dep. Trans.

38. In the course of the preceding lawsuits, Mr. Egbarin was deposed on December 8, 1995. Ex. G. Pl. 12/8/95 Dep. Trans. p 1.

39. During that deposition, Mr. Egbarin referenced and/or acknowledged his special defenses and both he and his attorney accused the Picards and Mr. Lewis of fraud and misrepresentation relative to the real estate transaction on several occasions. Ex. G Pl. 12/8/95 Dep. Trans. pp. 86-87, 98, 100-101, 111, 127, 135-144, 145-46, 167-68, 205, 222-23; 226.

40. During the course of the preceding actions, the plaintiffs accused the Picards and Mr. Lewis of utilizing false statements and false affidavits and/or presenting them to the court. Ex. H, 10/25/96 motions for contempt against Scott F. Lewis and Claude Picard filed by Nitor Egbarin.

**THE DEFENDANTS,
CLAUDE J. AND PAULINE M. PICARD**

By_____
 Joseph V. Meaney, Jr.
 Fed. Bar. #ct 04315
 Cranmore, FitzGerald & Meaney
 49 Wethersfield Avenue
 Hartford, CT  06106
 Tel: (860) 522-9100
 Fax: (860) 522-3379

## **CERTIFICATION**

       This is to certify that on this 27th day of May, 2005, I hereby mailed a copy of the foregoing to:

Thomas J. Hagarty, Jr., Esq.
Laura Pascale Zaino, Esq.
Halloran & Sage
One Goodwin Square
225 Asylum Street
Hartford, CT  06103

Nitor V. Egbarin and
Janet J. Egbarin
28 Ely Place
Simsbury, CT 06070

Nitor V. Egbarin and
Janet J. Egbarin
P.O. Box 230421
Hartford, CT 06123-0421

                                                                                                               _____
                                                                                                               Joseph V. Meaney, Jr.