63-1

United States District Court
District
FILED AT

6-23-                    2005
Term                Clerk

By Carol Hinder
Deputy Clerk

FILED

2005 JUN 13 P 12: 40
CS
DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **NITOR V. EGBARIN,** | : **CASE NO. 3:00 CV 01043 (JCH)** |
| **AND JANET J. EGBARIN** | : |
| **Plaintiffs,** | : |
| **v.** | : |
| | : |
| **LEWIS, LEWIS & FERRARO LLC,** | : |
| **SCOTT F. LEWIS, CLAUDE J. PICARD** | : |
| **AND PAULINE M. PICARD** | : |
| | : |
| **Defendants.** | : **June 9, 2005** |

## PLAINTIFFS' LOCAL RULE 56(a) 2 STATEMENT IN
## OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

In accordance with L. R. Civ. P. 56(a) 2, the plaintiffs submit the following statement admitting, denying or where not admitted, denying those allegations set forth in Rule 56(a)1 Statements submitted by Lewis, Lewis & Ferraro LLC, Scott F. Lewis, Claude J. Picard, "Mr. Picard," and Pauline M. Picard, "Mrs. Picard," both Statements dated May 27, 2005.

### A. DENIALS AND ADMISSIONS

1. Admit.

2. Admit.

3. Denied. Scott Lewis, hereinafter "Lewis," testified under oath at his deposition on March 25, 2005 that beginning in 1981,

1

he concentrated his practice primarily in Litigation and real
estate and; he and his law firm Lewis, Lewis & Ferraro, LLC,
"Lewis Lewis," did all the real estate closings and the
foreclosure collection litigation for the Hartford Home Savings
& Loan Bank (which became Bank of Hartford and changed to Eagles
Savings Bank and later was acquired by Webster Bank) until 1996.
**Ex. 3**, Scott F. Lewis March 25, 2005 deposition Transcript,
hereinafter "Lewis Dep. Trans.," pp. 25-28, 30-41. Lewis even
stated that he did real estate closings up to and as recently as
the day before his deposition on March 25, 2005 and used the
HUD-1 Settlement Statement for this purpose. **Id** at pp 31-40.

4. Denied. Scott F. Lewis has stated under oath that he and
his law firm Lewis Lewis did all the real estate foreclosure
collection litigation for the Bank of Hartford/Eagles Savings
Bank until 1996. **Ex. 3**, Lewis Dep. Trans., pp 40-41, Lewis and
his firm, Lewis, Lewis represent corporate creditors, i.e.,
Sanborn Corporation, American Home Mortgage, Inc., Bristol
Mortgage Corporation, Webster bank, Great Western Mortgage Co.,.
Metro Mortgage Corp., and other such mortgage and credit
collections companies. **(Ex. 39**, Print-out from the online
website of Lewis, Lewis as of 2/14/05).

5. Plaintiffs admit that Lewis and his firm Lewis also represented the Picards in the collection lawsuits and in the grievance proceedings they initiated.

6. Plaintiffs admit that Pauline M. Picard and Claude J. Picard who are the sellers of 8 Northcliff drive, Bloomfield, CT., are real estate developers and real estate landlords engaged in the business of renting and developing properties for sale to the consuming public. **Ex. 1, Nitor Egbarin Affidavit, "Egbarin Aff.," ¶3.**

7. Plaintiffs admit that on September 16, 1992, they entered into an agreement entitled "Purchase, Sale and Lease Agreement." The primary purpose of the agreement was to purchase the property at 8 Northcliff Drive, Bloomfield, CT, however, the closing was postponed for a certain period of time during which the plaintiffs rented the property and paid monthly rent plus additional monthly sum toward the down payment for the purchase. **Ex. 1, Egbarin Aff. ¶4.**

8. Plaintiffs admit that the Purchase, Sale and Lease Agreement provided, amongst other things, the purchase price of $330,000 and that the plaintiffs obtain a mortgage commitment from a lending institution. **Ex. 7**, Purchase, Sale and Lease Agreement, **¶¶ 1 & 10.** Plaintiffs had the right to extend the Purchase, Sale and Lease Agreement for six (6) months to April

3

1, 1994 within which period the plaintiffs were to obtain a mortgage commitment. Id; **Ex. 1**, Egbarin Aff. ¶4. On March 25, 1994 plaintiffs applied for mortgage through Sanborn Mortgage Corporation, "Sanborn." **Ex 8**, Uniform Residential Loan Application. Mr. Picard referred Sanborn to the plaintiffs and told the plaintiffs that he knew the owner of Sanborn very well having previously done several real estate mortgage businesses with Sanborn. **Ex. 1**, Egbarin Aff. ¶7. Sanborn orally approved the mortgage application on same day, March 25, 1994 based on the application and the plaintiffs' credit report, **Ex. 9**, Credit Report of Nitor and Janet Egbarin, the Report ordered by Sanborn Corp., on March 25, 1994. Plaintiffs on the same day, March 25, 1994 informed Mr. Picard that Sanborn orally approved the plaintiffs' application for mortgage and that a written offer would be issued after an appraisal of the 8 Northcliff Drive property. **Ex. 1**, Egbarin Aff. ¶9.

9. Admit.

10. Admit.

11. Plaintiffs admit that the Purchase, Sale and Lease Agreement required the plaintiffs to pay an initial payment of $10,000 and an additional payment of $10,000 at the time of the extension of the lease term and the plaintiffs did make these

4

two payments totaling $20,000. **Ex. 1**, Egbarin Aff. ¶10; Ex, 7, Purchase, Sale and Lease Agreement dated September 16, 1992.

12. Denied. The plaintiffs admit that the Purchase, Sale and Lease Agreement has a default provision and none of the parties terminated or was ever declared to be in default of the Purchase, Sale and lease Agreement. **Ex. 1**, Egbarin Aff. ¶12.

13. Plaintiffs admit that the Egbarins and the Picards entered into an amendment agreement to the Purchase, Sale and Lease Agreement, entitled "Amendment to Purchase and Sale Agreement." The remainder of the allegation in this paragraph is denied as the Amendment to Purchase and Sale Agreement speaks for itself. **Ex. 13**, Amendment to Purchase and sale Agreement dated May 23, 1994.

14. Denied. Plaintiff admits that it was necessary to amend the Purchase, Sale and Lease Agreement dated September 16, 1992 because the property appraised for $300,000 and to comply with residential mortgage banking laws. **Ex. 1**, Egbarin Aff. ¶13; Ex 10, Uniform Residential Appraisal Report, dated April 22, 1994. Furthermore, plaintiffs admit that Sanborn did an appraisal of the property and issued a commitment letter which formally approved the mortgage based on the appraised value of the property. **Ex. 1**, Egbarin Aff. ¶13. A few days after the Commitment Letter was issued, the defendants designed and

5

prepared the Amendment to Purchase and Sale Agreement to circumvent Sanborn's requirement that the purchase price for the property be equal to the appraised value of the property. **Ex. 1,** Egbarin Aff. ¶¶19-21. Under this scheme, the defendants planned to and received the $30,000 down payment they were holding in escrow, (see **Ex. 11)**, and then another $300,000 in the form of the $270,000 loan from Sanborn and the Statutory mortgage and promissory note for $30,000, (see **Ex. 14, Ex. 15** & **Ex. 32)**, for a total consideration or purchase price of $330,000. **Ex. 4,** Plaintiffs' Expert, Laura J. Borrelli, "Borrelli," March 29, 2005 deposition Transcript, hereinafter "Borrelli Dep. Trans.," pp. 31-32, 40 & 45; Ex. 2, Borrelli Rep. P 4.

15. Denied. Sanborn approved the mortgage with the requirement that the plaintiffs satisfy certain conditions, including the requirement that the Purchase, Sale and Lease Agreement be amended to verify the purchase price of $300,000, **Ex. 12,** Sanborn Commitment Letter dated May 12, 1994. Sanborn appraised the property for $300,000. **Ex 10,** Uniform Residential Appraisal Report, dated April 22, 1994.

16. Plaintiffs admit that Mr. Picard was not happy that the value of the property had further decreased to $300,000. **Ex 5,** Nitor Egbarin April 13, 2005 Deposition Transcript, "Egbarin Dep. Trans.," PP. 73-74. The Picards constructed the property in

6

1988 in a depressed market where real estate prices had been falling and originally listed it for sale for about $458,000. **Ex 5,** Egbarin Dep. Trans. pp. 152-155. The remaining allegations in this paragraph are denied and are not supported by any evidence submitted for this summary judgment and therefore should be stricken.

17. Plaintiffs admit they signed the Amendment to Purchase and Sale Agreement and mailed in the U.S mail the signed document to the Picards. The plaintiffs also admit that they obtained a mortgage loan of $270,000 from Sanborn and used the $30,000 in escrow (**Ex 11, Escrow**), as the cash down payment. **Ex. 1,** Egbarin Aff. ¶21; **Ex 6,** Attorney Robert Gilligan, "Gilligan," April 26, 2005 Deposition Transcript, "Gilligan Dep. Trans.," pp. 45-47.   The remaining allegations in this paragraph are denied and are not supported by any evidence submitted for this summary judgment and therefore should be stricken.

18. Denied. The allegations in this paragraph are not supported by any evidence submitted for this summary judgment and therefore should be stricken. Furthermore, the Egbarins did not need an additional sum of $30,000 to close the transaction. **Ex 5,** Egbarin Dep. Trans. pp. 7, 100-101; **Ex 6,** Gilligan Dep. Trans. pp. 38-39 and 96-97. The Picards offered the plaintiffs the promissory note and second mortgage under the scheme where

7

defendants wanted to reclassify the $30,000 deposit held in escrow, **(Ex 11,** Escrow), as "rent." **Ex. 3,** Lewis Dep. Trans., pp 64-65. But the Picards did not report the $30,000 as rent in their 1993 or 1994 tax returns. Picards' Tax returns attached to **Ex. 37 & Ex. 38.** The plaintiffs agreed to give the promissory note for $30,000 to the Picards in reliance upon the misrepresentations of Mr. Picard during the early May 1994 meeting that there was equity of $30,000 over the appraised value. **Ex 5,** Egbarin Dep. Trans. pp. 74-79, 82-83.

19. Plaintiffs admit that Lewis prepared the Statutory Mortgage Deed and Promissory Note for $30,000 which Lewis brought to the closing and were signed on May 31, 1994, before the closing by Janet Egbarin and, by Nitor Egbarin, at the closing. **Ex 5,** Egbarin Dep. Trans. p. 99. Lewis recorded the Statutory Mortgage Deed and Promissory Note for $30,000 (Ex. 14 and Ex. 15) in the lands Record office, in Bloomfield. **Ex. 2,** Borrelli Rep. p. 3; **Ex. 4,** Borrelli Dep. Trans. pp. 7, 22 & 46. The Land Records office in turn sent documents by U.S mail to Lewis or Lewis, Lewis, concerning the Statutory Mortgage Deed and Promissory Note for $30,000 (Ex. 14 and Ex. 15). **Ex. 1,** Egbarin Aff. ¶26. Lewis admitted he sent a copy of the Statutory Mortgage Deed and Promissory Note for $30,000 (Ex. 14 and Ex. 15) to the Egbarins. **Ex. 3** Lewis Dep. Trans. PP. 152-153. The

8

plaintiffs received a copy of the Statutory Mortgage Deed and Promissory Note for $30,000 (Ex. 14 and Ex. 15) from Lewis via U.S. mail. **Ex. 1**, Egbarin Aff. ¶25. The remaining allegations in this paragraph are not supported by any evidence submitted for this summary judgment and therefore should be stricken.

20. Denied. The plaintiffs did not readily agree to give the promissory note for $30,000, instead the plaintiffs agreed to the terms offered by the Picards in reliance upon the misrepresentations of Mr. Picard in the early May 1994 meeting. Egbarin Dep. Trans. PP. 74-79, 82-83. Lewis brought the Statutory Mortgage Deed and Promissory Note for $30,000 (Ex. 14 and Ex. 15) to the closing and concealed them from Sanborn or Sanborn's closing attorney, Gilligan. **Ex 5**, Egbarin Dep. Trans. P. 99. Lewis never gave any copy of the Statutory Mortgage Deed and Promissory Note for $30,000 (Ex. 14 and Ex. 15) to Gilligan. **Ex 6**, Gilligan Dep. Trans., PP. 28-30, 34-38, 47, 50 and 70-71; **Ex. 2**, Borrelli Rep. P. 4. The $30,000 loan (represented in Ex. 14 and Ex. 15) is not listed in the Hud-1 Settlement Statement. **(Ex. 16**, HUD-1); **Ex 6**, Gilligan Dep. Trans., pp. 44-48 & 96-97; Borrelli Dep. Trans., pp. 22 & 67-69. Also, neither the bank's attorneys' closing file nor the bank's file for the Egbarins contains any copy of the Statutory Mortgage Deed and Promissory Note for $30,000 (Ex. 14 and Ex. 15). **Ex 6**, Gilligan Dep.

9

Trans., PP. 28-30,34-38, 47, 50 & 70-71; **Ex. 2,** Borrelli Rep. p

4; **Ex. 4,** Borrelli Dep. Trans., pp. 38-40 & 69-71. The

defendants violated Residential Mortgage banking law, 18 U.S.C

§1001 **(Ex.17),** when they concealed the Statutory Mortgage Deed

and Promissory Note for $30,000 (Ex. 14 and Ex. 15) from the

bank or its closing agent, Robert Gilligan of Mayo, Gilligan and

Zito. **Ex. 2,** Borrelli Rep. P. 4; **See,** ¶20, infra.

21. Denied. Plaintiffs refused to make payments on the

Statutory Mortgage Deed and Promissory Note for $30,000 because

the plaintiffs believed these instruments were illegal and void.

**Ex. 1,** Egbarin Aff. ¶¶27-29.

22. Plaintiffs admit that Lewis filed an action in the

Hartford Superior court to foreclose on the second mortgage.

**(Ex. 20).** Plaintiffs deny the remainder. **Ex. 1,** Egbarin Aff.

¶29. Defendants filed two false affidavits, (Ex. 21 and Ex. 22),

on December 1, 1995 and on November 22, 1995, in this action.

Lewis certified in the papers he filed in court that the

affidavits were sent by U.S. mail to the plaintiffs. **Ex. 1,**

Egbarin Aff. ¶30. At a hearing in this same action Lewis falsely

represented to Judge Freed that the RESPA, the HUD-1 **(Ex.16)**

lists the Statutory Mortgage Deed and Promissory Note for

$30,000 (Ex. 14 and Ex. 15). **Ex. 24,** Transcript of hearing on

January 22, 1996, "Court Trans.," P. 3. A court order was issued

10

and sent in the U.S mail, after the hearing, to the plaintiffs.
**Ex. 1,** Egbarin Aff. ¶33. Also, at another hearing in this same
action, Lewis falsely represented to Judge Freed that lines 201
and 506 of the HUD-1 **(Ex.16)** lists his clients' loan for $30,000
(Ex. 14 and Ex. 15) and that he fully disclosed the Statutory
Mortgage Deed and Promissory Note for $30,000 (Ex. 14 and Ex.
15)to the bank. **Ex. 29,** Court Transcript of hearing on July 15,
1996, Court Trans., PP. 22-25. Another court order was issued
and sent in the U.S mail, after this hearing, to the plaintiffs.
**Ex. 1,** Egbarin Aff. ¶36.

23. Plaintiffs admit that Lewis filed a second action
concerning the promissory note for $30,000 in the New Britain
Superior court and for a Prejudgment remedy Attachment of
plaintiffs' other assets. **Ex. 23;** Egbarin Aff. ¶35. During the
hearing on the prejudgment remedy attachment, "PJR," Lewis
concealed from the court the fact that defendants concealed the
Statutory Mortgage Deed and Promissory Note for $30,000 (Ex. 14
and Ex. 15) from the bank in violation the Residential Mortgage
banking law, 18 U.S.C §1001 **(Ex.17).** **Ex. 1,** Egbarin Aff. ¶38. A
court order **(Ex. 25,** PJR order of attachment, February 13, 1996)
was issued and sent in the U.S mail, after the PJR hearing, to
the plaintiffs. **Ex. 1, Egbarin Aff. ¶39.** Another court order
**(Ex. 26,** order freezing assets of the Plaintiffs, March 4, 1996)

11

was issued and sent in the U.S mail, after the PJR hearing, to
the plaintiffs. **Ex. 1,** Egbarin Aff. ¶40. A third court order
**(Ex. 27,** order freezing bank accounts, including out-of-state
bank accounts of the Plaintiffs, October 30, 1996) was issued
and sent in the U.S mail, after the PJR hearing, to the
plaintiffs and a copy was sent in interstate wire to several
out-of-state banks where the plaintiffs maintained credit card
accounts. **Ex. 1,** Egbarin Aff. ¶41. A fourth court order **(Ex. 30,**
order freezing plinatiff's personal injury cases, April 7, 1997)
was issued and sent in the U.S mail, after the PJR hearing, to
the plaintiffs. **Ex. 1,** Egbarin Aff. ¶43. Finally, Defendants
filed one false affidavit, **(Ex. 34)** on April 24, 1998 in this
PJR action. Lewis certified in the papers he filed in court that
this affidavit was sent by U.S. mail to the plaintiffs. **Ex. 1,**
Egbarin Aff. ¶44.


24. Plaintiffs admit that in the second action in the New
Britain Superior court for Prejudgment Remedy Attachment, a
Summary judgment was entered on July 2, 1998. **Ex. 1,** Egbarin,
Aff. ¶46. Prior to the summary judgment, the plaintiffs filed
for bankruptcy protection in January 1997 and the defendants
filed papers in the bankruptcy court on February 4, 1997. **Ex.**
**30,** Defendants' bankruptcy Papers. The defendants subsequently

12

commenced a retaliatory grievance action to impound the plaintiff's law license when they defendants were unable to seize substantial assets from the plaintiff's law practice. **Ex. 33,** Transcript of Grievance Hearing, September 10, 1997, "Griev. Trans.," PP. 32-33.

25. Plaintiffs admit raising the defense that Mr. Picard misrepresented facts in early May 1994 during the meeting to amend the Purchase, Sale and Lease Agreement. **(See, ¶18, infra).** Plaintiffs also admit raising the defense of lack of consideration. However, the defendants misrepresented other facts, submitted false affidavits and concealed information from courts during the course of those lawsuits and these claims were not part of those pending lawsuits. **See, ¶¶18, 20, 22 and, 23, infra).**

26. Denied. The HUD-1 shows a contract price of $300,000 for the property but the Picards received $330,000 as the consideration for the property. **Ex. 2,** Plaintiffs' Expert, Laura J. Borrelli, January 27, 2005 Expert Report, hereinafter "Borrelli Rep." p 4. The HUD-1 Settlement Statement was accurately prepared and there were no errors, **Ex 6,** Gilligan Dep. Trans. pp. 8-9 & 35-36, and the deposit or earnest on the HUD-1 is correct, is intended to mean cash not a note or mortgage. **Ex 6,** Gilligan Dep. Trans. P. 48. **Ex. 4,** Borrelli Dep.

13

Trans. PP. 41 & 64-65. However, the HUD-1 was not accurate because it did not reflect the $330,000 consideration the Picards received for the property and; it did not reflect the $30,000 second mortgage the defendants prepared and brought to the closing. **EX. 4**, Borrelli Dep. Trans., PP. 40-42 & 49. The remaining allegations in this paragraph are not supported by any evidence submitted for this summary judgment and therefore should be stricken.

27. Admit. The $30,000 loan (represented in Ex. 14 and Ex. 15) is not listed in the Hud-1 Settlement Statement, **(Ex. 16,** HUD-1); **Ex 6**, Gilligan Dep. Trans., pp. 44-48 & 96-97, because the commitment letter did not permit subordinate financing, **Ex 6**, Gilligan Dep. Trans., pp. 9, 36 & 44-45, and, Lewis never gave any copy of the Statutory Mortgage Deed and Promissory Note for $30,000 (Ex. 14 and Ex. 15) to the bank's closing attorney. **Ex 6**, Gilligan Dep. Trans., pp. 28-30, 34-38, 47, 50 & 70-71; **Ex. 2**, Borrelli Rep. P. 4; **Ex. 4**, Borrelli Dep. Trans., PP. 37-40.

28. Denied. Lewis was the seller's attorney and he sent various documents to Sanborn's closing attorney for use in preparing the HUD-1, including the draft warranty deed that transferred the property to the Egbarins for $300,000. **Ex. 3**, Lewis Dep. Trans. pp. 178-183. Lewis knew that the Statutory

14

Mortgage Deed and Promissory Note for $30,000 (Ex. 14 and Ex.
15) he signed and brought to the closing was not listed in the
HUD-1 since he never gave any copy of these instruments to
Sanborn's closing attorney. **Ex 6**, Gilligan Dep. Trans., PP. 28-
30, 34-38, 47, 50 & 70-71. **Ex. 2**, Borrelli Dep. Trans., P. 43.
Sanborn did not permit subordinate financing. **Ex 6**, Gilligan
Dep. Trans., pp. 9, 36 and 44-45.

29. Denied. Plaintiffs admit telling Mr. Rifkin, owner of
Sanborn that the Picards offered a second mortgage for $30,000
short fall in the appraised value and Mr. Rifkin responded
clearly that he did not want to know any of that and it was not
part of his transaction. **Ex 5**, Egbarin Dep. Trans. pp. 100-102,
119 and 156; **Ex. 1**, Egbarin, Aff. ¶18.

30. Denied. These allegations in this paragraph are not
supported by any evidence submitted for this summary judgment
and therefore should be stricken. There <u>was never any copy</u> and
there <u>is no copy</u> of the Statutory Mortgage Deed and Promissory
Note for $30,000 (Ex. 14 and Ex. 15) in the bank's file or in
the bank's closing attorney's file. **Ex 6**, Gilligan Dep. Trans.,
pp. 28-30, 34-38, 47, 50, & 70-71; **Ex. 4**, Borrelli Dep. Trans.,
PP. 38-40 & 69-71. Even Lewis agreed that the contents of the
bank's file would only have come from the Closing file. **Ex. 3,
Lewis Dep. Trans., P. 151**. There was no copy of the Statutory

15

Mortgage Deed and Promissory Note for $30,000 (Ex. 14 and Ex.
15) in the bank's file when plaintiffs subpoenaed the banks file
for this matter or when the plaintiffs were supplied with a copy
of the bank's file when Lewis subpoenaed these files in 1996, in
respect of the PJR hearing in the New Britain superior court
action. **Ex. 1,** Egbarin, Aff. ¶¶47 & 48.

31. Denied. These allegations in this paragraph are not
supported by any evidence submitted for this summary judgment
and therefore should be stricken. The bank was never aware of
existence of the Statutory Mortgage Deed and Promissory Note for
$30,000 (Ex. 14 and Ex. 15). **Ex 6,** Gilligan Dep. Trans., PP. 28-
30, 34-38, 47, 50 & 70-71; **Ex. 2,** Borrelli Dep. Trans., PP. 37-
39, 44-45 & 70-71. There were no clerical errors in the HUD-1
Settlement Statement, **Ex 6,** Gilligan Dep. Trans., PP. 8-9 & 35-
36, instead, the HUD-1 was not accurate because the Picards
received $330,000 for the property and the $30,000 second
mortgage and defendants concealed these facts at the closing. **Ex
6,** Gilligan Dep. Trans., PP. 28-30,34-38, 47, 50 & 70-71; **Ex. 2,**
Borrelli Dep. Trans., PP. 37-39, 40-42, 44-45, 49 & 70-71.

32. Denied. The subsequent collection lawsuits, the
**Collection-Fraud Scheme,** defendants filed false affidavits, made
false statements and concealed the fact that the $30,000 they
were seeking to collect was received from the purchase-price-

16

fraud scheme. **Ex. 1**, Egbarin, Aff. ¶38. In the **Retaliatory-Grievance Scheme** defendants filed false charges and later misrepresented facts in the presentment proceedings in order to impound plaintiffs' law license and his business and property in retaliation for the plaintiffs' refusal to pay the $30,000 illegal second mortgage from the purchase-price-fraud scheme. **Ex. 1**, Egbarin, Aff. ¶¶49 & 50; **Ex. 33**, Transcript of Grievance Hearing, September 10, 1997, "Griev. Trans.," PP. 3 & 6.

33. Denied. The allegations in this paragraph are not supported by any evidence submitted for this summary judgment and therefore should be stricken. Lewis testified that he relied on hearsay statement to form his decision to file grievance charges against the plaintiff. **Ex. 33**, Griev. Trans. PP. 32-33. The defendants' false grievance charges, **Ex. 31**, Amended Grievance Complaint, were dropped and instead different claims were tried before Judge Berger in the presentment proceedings. **Ex. 35**, Grievance Committee v. Egbarin, (Conn. Super, docket # CV98-0585474S, June 22, 1999); **Ex. 1**, Egbarin, Aff. ¶49. Contrary to Lewis' hearsay charges, the plaintiffs' tax returns were filed with the IRS. **Ex. 33**, Griev. Trans. PP. 22-24.

34. Admit.

35. Plaintiffs admit that the defendants' false grievance charges resulted in the Judge Berger suspending plaintiff from

17

the practice of law for other reasons. **Ex. 35**, <u>Grievance</u>
<u>Committee v. Egbarin</u>, (Conn. Super, docket # CV98-0585474S, June
22, 1999). Judge Berger relied exclusively on the testimony of
Lewis and Mr. Picard. Ex. 35, <u>Grievance Committee v. Egbarin</u>,
(Conn. Super, docket # CV98-0585474S, June 22, 1999) at p. 8-11.
On appeal, the appellate court concluded that the testimonies of
Lewis and Mr. Picard were sufficient to support the trial
court's conclusions since it was the prerogative of the court to
determine what weight, if any, to give to the testimony of
Picard and Lewis. <u>Grievance Committee v. Egbarin</u>, 61 Conn. App.
445, 459, 767 A.2d 732, (2001), cert. denied 255 Conn. 949, 769
A.2d 64(2001). Discovered evidence now shows that the
testimonies of Lewis and Mr. Picard should not have been given
that much weight in the grievance presentment hearing. Lewis
lied several times to Judge freed in the collection actions,
**¶¶22 & 27, supra;** Picards now admit they received monies from
the plaintiffs, (**Ex. 38** & **Ex. 39**, Picards Admissions), but
earlier, Lewis and Mr. Picard filed false affidavits stating
that the Picards did not any monies from the plaintiffs, **Ex. 21,**
**Ex. 22** & **Ex. 34**, Picards' Affidavit. The Picards filed false tax
returns in 1993 and 1994 when they reported receiving only
$300,000 instead of $330,000 and did not include the $30,000
escrow as income. **Ex. 37** & **Ex. 38**, 1993 and 1994 Tax Returns;

18

Ex. 19, Substitute 1099S Form; See ¶¶18, 20, 22 & 23 infra.
Lewis and Mr. Picard lied when they testified that the
plaintiffs gave them plaintiffs' 1992 and 1993 tax returns in a
phantom application process for the second mortgage. **Ex. 3** Lewis
Dep. Trans. PP. 98-100; **Ex. 1,** Egbarin, Aff. ¶50.

36. Admit

37. Admit. Plaintiffs admit also that the fraud defenses
pleaded in the prior lawsuits are different from the fraud
claims in this matter. The parties are different and some of the
misconduct occurred on different dates.

38. Admit

39. Admit. Plaintiffs admit also that the fraud defenses
pleaded in the prior lawsuits are different from the fraud
claims in this matter. The parties are different and some of the
misconduct occurred on different dates.

40. Admit. Plaintiffs admit defendants continued to conceal
their fraud. Lewis lied under oath in this matter even in the
face of object and contradicting evidence. See, **Ex. 3,** Lewis
Dep. trans. PP 149-153, 172-173 & 175: See also, Evidence in
**¶¶18, 20, 22, 23, 26, 27, 28, 29 & 30, supra.** These misconducts
of Lewis, infra, violate professional Rules of Conduct, Rule
3.3, 4.1 and 8.4. **Ex. 40; Ex. 41 & Ex. 42.**

## B. DISItemized ISSUES OF MATERIAL FACTS

While the evidence in the record in this matter supports plaintiff's claims, it is arguable that there could be genuine issues of material facts to be tried in respect of the following issues:

1. Whether the defendants' association constitutes an enterprise under the RICO statute?

2. Whether the defendants executed a scheme to defraud while using the mail in furtherance of that scheme?

3. Whether the defendants executed a scheme to defraud while using interstate wires in furtherance of that scheme?

4. Whether the defendants executed a scheme to defraud a financial institution?

5. Whether the defendants' conducts in the state courts constitute obstruction of justice under the RICO statute?

6. Whether the defendants' conducts constitute a pattern of racketeering activity?

20

7. Whether the plaintiffs' RICO claim is barred by the applicable statute of limitation?

8. Whether the defendants, Lewis and Lewis Lewis are debt collectors under the FDCPA?

9. Whether the plaintiffs' FDCPA claim is barred by the doctrines of Res Judicata, Collateral Estoppel or Privilege?

10. Whether the plaintiffs' FDCPA claim is barred by the applicable statute of limitation?

11. Whether the plaintiffs' Fraud claim is barred by the doctrines of Res Judicata, Collateral Estoppel or Privilege? ABANDONED.

12. Whether the plaintiffs' Fraud claim is barred by the applicable statute of limitation? ABANDONED.

13. Whether the plaintiffs fail to state a claim of Intentional Infliction of Emotional Distress?

14. Whether the plaintiffs' claim of Intentional Infliction of Emotional Distress is barred by the applicable statute of limitation?

15. Whether the plaintiffs fail to state a claim of Negligent Infliction of Emotional Distress?

16. Whether the plaintiffs' claim of Negligent Infliction of Emotional Distress is barred by the applicable statute of limitation?

17. Whether the plaintiffs fail to state a claim of tortuous Interference with Business Expectancy?

18. Whether the plaintiffs' claim of tortuous Interference with Business Expectancy is barred by the applicable statute of limitation?

19. Whether the conducts of defendants Lewis and Lewis Lewis, violate CUTPA?

20. Whether the plaintiffs' CUTPA claim is barred by the applicable statute of limitation

By_____
Nitor V. Egbarin,
28 Ely Place
Simsbury, Connecticut 06070


Subscribed and sworn to before me this _____ day of June, 2005


_____
NOTARY

**KENNETH S. SKLODOSKY**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES SEP. 30, 2006


22

THE PLAINTIFFS

BY _____
Nitor V. Egbarin, pro se
28 Ely Place
Simsbury, CT   06070
Tel.: (860) 680-1448


BY _____
Janet J. Egbarin, pro se
28 Ely Place
Simsbury, CT   06070
Tel.: (860) 680-1448

CERTIFICATION

This is to certify that a copy of the foregoing was on the above
date mailed postage prepaid to all counsel of record as follows:

Thomas J. Hagarty, Jr.
Halloran & Sage LLP
One Goodwin Square
Hartford, CT 06103

Laura Pascale Zaino
Halloran & Sage LLP
One Goodwin Square
Hartford, CT 06103

Joseph V. Meaney, Jr.
Cranmore, FitzGerald & Meaney
49 Wethersfield Avenue
Hartford, CT 06114

By _____
   Nitor V. Egbarin