UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

NITOR V. EGBARIN and                          :        CIVIL ACTION
JANET J. EGBARIN                                       NO. 3:00-CV-01043-JCH
      Plaintiff
V.                                                     :

LEWIS, LEWIS & FERRARO, LLC
SCOTT F. LEWIS, CLAUDE J. PICARD
AND PAULINE M. PICARD                         :        JUNE 17, 2005
      Defendant

**REPLY BRIEF OF DEFENDANTS,
LEWIS, LEWIS & FERRARO, LLC AND SCOTT LEWIS**

**I.      Plaintiffs' Memorandum of Law Establishes that the "Enterprise" Element
of a RICO Claim is Lacking**.

On Page 16 of his Memorandum of Law, the plaintiffs state the following with

respect to the "enterprise" element:

> The enterprise in this matter is an association of individuals, who are Mr.
> Picard, Mrs. Picard and Lewis.  These individuals share the common
> purpose of defrauding a lending bank and the plaintiffs when they lied and
> hid facts in order to obtain $30,000 more than the bank-appraised value of
> the Picards' property and in order to collect these monies against plaintiffs.

By this statement, the plaintiffs clearly admit that the so-called "enterprise"

involving the defendants arises solely from the transaction involving the plaintiffs and,

specifically, the obtaining of the $30,000 note and the collection of that note.  In United

States v. Turkette, 452 U.S. 576, 583 (1981), the Supreme Court made it clear that the

"enterprise" is not the "pattern of racketeering activity" itself; it is an entity separate and

apart from the pattern of activity in which it engages.  In applying this rule, the courts

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

have made it clear that the existence of an "enterprise" cannot be established simply by proving the alleged predicate racketeering acts themselves.  The courts have stated that the members of the group as a whole must have a common link other than the racketeering activity itself.  Schmidt v. Fleet Bank, 16 F.Supp.2d 340, 349 (1998), citing McDonough v. National Home Ins. Co., 108 F.3d 174, 177 (8th Cir. 997).  The courts have further stated that "In assessing whether an alleged enterprise has an ascertainable structure distinct from that inherent in a pattern of racketeering, it is appropriate to consider whether the enterprise would still exist were the predicate facts removed from the equation."  Schmidt, supra, citing Handeen, 112 F.3d 1339, 1352. Most recently, the Second Circuit has affirmed that rule in First Capitol Assessment Management, Inc. v. Satinwood, Inc., 385 F.3d 159 (2004).  I in finding allegations of the alleged "enterprise" to be insufficient, the court stated: "The Amended Complaint fails, however, to detail any *course* of fraudulent or illegal conduct separate and distinct from the alleged predicate racketeering acts themselves—a requirement in this circuit." (at 174, emphasis in original).

Since the plaintiffs Amended Complaint "fails . . . to detail any course of fraudulent or illegal conduct separate and distinct from the alleged predicate racketeering acts themselves" (as conceded in the plaintiffs' brief), it fails to establish the existence of an ongoing enterprise.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

**II.     Plaintiffs Have Failed to Establish any Basis for RICO Liability Based Upon Mail Fraud**.

Violation of the Federal Mail Fraud statute can be a "racketeering activity" which will support a RICO violation.  The plaintiff, in his brief, has asserted three separate "mail fraud schemes".  He has alleged a "Purchase-Price-Fraud Scheme", a "Collection-Fraud-Scheme", and a "Retaliatory Grievance Scheme".  As outlined below, none of these alleged schemes can constitute mail fraud and therefore it cannot support a finding of RICO liability.

**A.     Purchase-Price-Fraud Scheme.  (Page 22 of Plaintiff's Brief)**

The plaintiffs assert the so-called "Purchase-Price-Fraud Scheme" by which the co-defendants, Picards "obtained, through misrepresentations, $30,000 more than the lending bank appraised the PIcards' property."  The essence of this claim is that Mr. Picard tricked the plaintiffs into believing that the property in question was worth $330,000, rather than the $300,000 shown in the bank's appraisal.  It is claimed that the plaintiff Nitor Egbarin, met with Mr. Picard and that Mr. Picard made these representations to him.  Based on these representations, the plaintiffs were then willing to sign a note and mortgage to the Picards for an additional $30,000, beyond the anticipated mortgage proceeds of $270,000 and the $30,000 cash previously paid as a down payment.  This would have resulted in a total purchase price of $330,000, rather than $300,000.  The plaintiffs further claim that the note and mortgage was signed in a room in the offices of Mayo & Gilligan at the May 31, 1994 closing.

- 3 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

These allegations clearly fail to state a claim for mail fraud as to the defendants. First, as to the Lewis defendants, there is no claim whatsoever that they were involved in the claimed misrepresentation made by Mr. Picard to Nitor Egbarin.  Second, the claimed misrepresentation which, in turn, allegedly caused the plaintiffs to sign the note and mortgage, was not made through the mail, but rather was made in a private face-to-face meeting between Mr. Egbarin and Mr. Picard.  It is fundamental that misrepresentation made at a private meeting cannot constitute mail fraud, since the use of the post office is not involved.  Tel-phonic Services, Inc. v. TBS International, Inc., 975 F.2d 1134, 1139 (5th Cir. 1992).  Likewise, the actual signing of the note and mortgage took place at a closing in a law firm and thus did not involve the mail.  Thus, the two key elements of the "Purchase-Price-Fraud Scheme" (the alleged misrepresentation and the actual signing of the mortgage and note) did not involve the U.S. mail.  Further, any damage flowing from the alleged misrepresentation and the signing of the mortgage and Note would not in any way involve the U.S. Mail.  Thus, even if there was some incidental use of the U.S. mail in this so-called scheme, (such as mailing the note and mortgage to the Town Clerk's Office), it could not be considered the proximate cause of any damages which the plaintiff is alleging, all of which allegedly arise out of the efforts to collect the note.  (It should be emphasized that the plaintiff did not suffer the actual loss of $30,000 due to the signing of the note since the debt, although reduced to a judgment, has never been collected and was discharged in bankruptcy.)

One Goodwin Square
225 Asylum Street
Hartford, CT 06103


HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

The plaintiffs' emphasis on the improperly prepared HUD-1 Statement is a total

red herring and does not in any way support a claim of mail fraud.  This document was

not prepared by the defendants and was signed by the Picards at the closing.  Thus,

neither defendant put that document in the mail.  Second, that document is totally

irrelevant to the claimed damages under the so-called "Purchase-Price-Fraud Scheme",

all of which allegedly stem from the signing of the $30,000 note.  Third, the plaintiff

admittedly told the bank about the second mortgage and the bank was totally indifferent

to it.  Finally, none of the alleged damages can logically be causally related to the

HUD-1.

### B.     Collection-Fraud-Scheme.  (Page 24 of Plaintiffs' Brief)

The second alleged claim of mail fraud, the "Collection-Fraud-Scheme", outlined

at Page 24 of the plaintiffs' brief, is based upon the defendants' successful efforts to

obtain a judgment on the $30,000 note upon default by the plaintiffs.  This claim too is

without merit.  There were two actions filed, first a foreclosure action in the Hartford

Superior Court and second, an action on the note in the New Britain Superior Court.

The plaintiffs' references to false affidavits and false statements in the foreclosure

action are of no import since the foreclosure action was abandoned and did not result in

a judgment against the plaintiff.  With respect to the action in New Britain Superior

Court, it is undisputed that that action resulted in a judgment in favor of the Picards.

The plaintiffs assert that false affidavits were filed in that action and that false

statements were made to the court.  Obviously, false statements to the court cannot

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

support a claim for mail fraud since they do not involve the U.S. Mail.  Further, the

courts have made it clear that the alleged filing of false pleadings in the course of a civil

action cannot be considered predicate acts of mail fraud for purposes of establishing a

RICO claim.  Daddona v. Gaudio, 156 F.Supp.2d 153 (J. Hall 2000); Nolan v. Galaxy

Scientific Corp., 269 F.Supp.2d 635 (E.D. PA. 2003); Bulow v. Bulow, 657 F.Supp. 1134

(S.D.N.Y. 1987).  The courts have not allowed such claims even in situations (unlike this

situation) where the plaintiff had prevailed in the underlying action.  The court's attention

is called to Judge Hall's decision in the Daddona case since it is very similar in that the

plaintiff essentially lost the underlying civil action and then attempted to assert a RICO

claim, alleging that the defendant's success in the underlying action was the result of

fraud.  Judge Hall noted that the plaintiff was simply attempting to re-litigate issues that

had already been decided in another court and cited extensive policy reasons for not

allowing this to occur.

### C.    Retaliatory Grievance Scheme.  (Page 28 of Plaintiffs' Brief)

The plaintiffs appear to allege that the filing of a grievance against Mr. Egbarin

also constituted mail fraud because it was based on false statements and/or allegations

against him.  This claim fails for similar reasons.  First, the plaintiff does not point to any

particular document placed in the U.S. mail in support of his claim.  Most of the

assertions made by the plaintiff in his brief relate to testimony in court or statements

made to the court in support of the grievance.  Obviously such statements cannot

amount to mail fraud.  Further, just as in Daddona, supra, the plaintiff is attempting to

- 6 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

re-litigate an issue which he already lost in another forum and thus, for public policy

reasons, any mailing of documents in that underlying action cannot form the basis of a

RICO claim based on mail fraud.

**III.    Wire Fraud Scheme.  (Page 32 of Plaintiffs' Brief)**

The plaintiff outlines his claim for wire fraud as a predicate act and simply

incorporates his arguments relating to mail fraud.  These claims fail for the same

reasons as outlined in Section II above.

**IV.    Bank Fraud Scheme.  (Page 33 of Plaintiffs' Brief)**

The plaintiffs assert that the defendants are guilty of bank fraud based upon the

improperly completed HUD-1 form.  This claim fails for the simple reason since the bank

fraud statute is totally inapplicable to the facts asserted by the plaintiff.  The whole basis

of the plaintiff's claim is the damages stemming from the $30,000 note.  This note did

not involve a bank and therefore the bank fraud statute is inapplicable.  The bank was

involved only to the extent that it provided the $270,000 mortgage and there are no

claims of damage arising from that transaction.  Even if the bank were damaged by the

alleged concealment of the second mortgage, the plaintiffs have no standing to assert

such claims.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## V.    Obstruction of Justice.  (Page 35 of Plaintiffs' Brief)

The plaintiffs claim that the defendants' conduct in the state court collection

action and the grievance claim constitute obstruction of justice under the federal

obstruction of justice statute.  In asserting this claim, the plaintiffs are blatantly

misstating the law to this court.  The federal obstruction of justice statute does not apply

to actions taken in state court proceedings.  O'Malley v. New York City Transit Authority,

896 F.2d 704 (2d Cir. 1990).  Even if the defendants' alleged actions could constitute

obstruction of justice under Connecticut law, it could not support a claim under RICO

because that "crime" is not one of those state law crimes listed as constituting

"racketeering activity" in the definitional section of the RICO statute [18 U.S.C.

§ 1961(1)(A)].

## VI.    Fear Debt Collection Practices Claim.  (Page 40 of Plaintiffs' Brief)

It is difficult to respond to the plaintiffs' claim under this statute because the

claims are so vague.  These defendants have been acting under the assumption that

the claims were based upon the filing of a civil action against the plaintiffs which

resulted in a judgment in favor of the Picards.  In their recently filed brief, however, the

plaintiffs now appear to assert that the filing of the grievance against Mr. Egbarin was a

violation of FDCPA.

First, it should be noted that there is nothing in this statute which applies to the

actual filing and prosecution of lawsuits in state court, particularly one which was

successful.  It seems fairly obvious that Congress did not intend to extend the scope of

- 8 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

the statute to cover state collection actions and it is doubtful that it would have the

constitutional authority to do so.  Rather, any abusive use of collection actions is left to

be governed by state judicial rules and state actions for malicious prosecution.  Further,

there is nothing in the Federal Act which would in any way allow an action under this

statute to be based upon the filing and prosecution of a grievance since this too would

involve interference with a state's right to govern its court system, including the conduct

of the lawyers who practice before those courts.  This is particularly true in this case

where the grievance against Mr. Egbarin was sustained by the Superior Court, resulting

in his disbarment.  In any event, both the civil action and the grievance were filed more

than one year before the filing of the FDCPA claim and therefore are barred by the

applicable statute of limitations.

**VII.    Negligent and Intentional Infliction of Emotional Distress, Tortuous Interference with Business, and CUTPA.  (Pages 46-56 of Plaintiff's Brief)**

These claims asserted by the plaintiffs all appear to be based upon the successful

prosecution of the collection action against the plaintiffs and the filing of the grievance

petition which ultimately resulted in the plaintiff's disbarment.  The plaintiffs have

pointed to no Connecticut case law which would allow the plaintiff to sue under any of

these theories of liability where the litigation terminated in an unfavorable fashion to the

plaintiff.  It is black-letter law that a claim for malicious prosecution can only be brought

if the plaintiff can show that the underlying litigation was terminated in his favor.  There

exists no cause of action which allows a plaintiff to sue for damages allegedly resulting

- 9 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

from a lawsuit or legal proceeding which terminated adversely to the plaintiff's interests.

See Blake v. Levy, 191 Conn. 257 (1983) (barring claim for tortuous interference based

upon litigation which did not terminate in the plaintiffs favor).

THE DEFENDANTS:
LEWIS, LEWIS & FERRARO, LLC, AND
SCOTT LEWIS


By_____
    Thomas J. Hagarty, Jr. of
    HALLORAN & SAGE LLP
    Fed. Bar #ct19353
    One Goodwin Square
    225 Asylum Street
    Hartford, CT 06103
    (860) 522-6103

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## **CERTIFICATION**

This is to certify that on this 17th day of June, 2005, I hereby mailed a copy of the foregoing to:

Joseph Meaney, Esq.
Cranmore, Fitzgerald & Meaney
49 Wethersfield Avenue
Hartford, CT 06114-1102

Nitor V. Egbarin and
Janet J. Egbarin
28 Ely Place
Simsbury, CT 06070

Nitor V. Egbarin and
Janet J. Egbarin
P.O. Box 230421
Hartford, CT 06123-0421

_____
Thomas J. Hagarty, Jr.

701618_1.doc

- 11 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105