UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NITOR V. EGBARIN, (JCH) AND JANET J. EGBARIN<br>    Plaintiffs, | CASE NO. 3:00 CV 01043 |
| v. | |
| LEWIS, LEWIS & FERRARO LLC, SCOTT F. LEWIS, CLAUDE J. PICARD AND PAULINE M. PICARD<br>    Defendants | JUNE 24, 2005 |

**DEFENDANTS CLAUDE AND PAULINE PICARD'S MEMORANDUM OF LAW IN REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS FOR SUMMARY JUDGEMENT**

**I.    RICO'S STATUTE OF LIMITATIONS AND DEFINITIONS BAR EVERY ALLEGED INSTANCE OF "RACKETEERING ACTIVITY" OF WHICH THE PLAINTIFF CLAIMS INJURY**

The Uniform statute of limitations period for a civil RICO claim provides a 4 year period to bring a claim from the time plaintiff discovers or should have discovered the RICO injury. *Tho Dinh Tran v. Alphonse Hotel Corp, 281 F.3d 23 (2nd Cir.)*; *Peia v. United States, 152 F.Supp.2d 226 (D. Conn. 2001).*; *Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 U.S. 143, 156., 107 S.Ct. 2759.* The Connecticut District Court has allowed for very limited

1

flexibility in the RICO statute of limitations period when the defendants caused a delay in the plaintiff's ability to bring suit. *Peia, 1552 F.Supp.2d, 223*. However, this is clearly not the circumstance in the case at hand considering that the plaintiffs have previously brought similar claims for these alleged injuries in another forum, and is attempting to use the RICO statute to re-litigate these old issues.

Under the 4 year statute of limitation period, the plaintiff claims that the RICO claim was timely made for any injuries that occurred after May 24, 1996. (Plaintiffs opposition to summary judgment pg. 40). By their own admission of the statute of limitations time period, this would bar the plaintiffs' 1st of 6 alleged instances of a "pattern of racketeering", which the plaintiff claims occurred on March, 4, 1996. (Opposition pg. 39).

Furthermore, 18 U.S.C. § 1961 does not, in any of the defined crimes constituting "racketeering activity", include the sixth allegation of "racketeering activity" regarding the grievance petition filed by the defendants that resulted in the loss of Mr. Egbarin's law license. (Opposition pg. 40). Any claim for restitution for the loss of the plaintiff's law license, as a result of the defendant's grievance petition, does not constitute racketeering activity under

the RICO statute. Therefore, the plaintiffs' argument on this issue lacks merit and judgment should enter in favor of Claude and Pauline Picard.

The remaining allegations are additionally barred, regardless of the statute of limitations, due to the fact that the plaintiffs wrongly characterize the defendants as an "enterprise" under the required elements of RICO. This issue is dealt with extensively below.

## II. PLAINTIFFS OPPOSITION AGAINST SUMMARY JUDGMENT DOES NOT ESTABLISH THE "ENTERPRISE" ELEMENT OF A RICO CLAIM

To establish a claim under RICO, a plaintiff must satisfy two pleading burdens. First, the plaintiff must show that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962. This is done through satisfying seven elements, which include: (1) that the defendant (2) through commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, maintains an interest in, or participates in (6) an enterprise (7) the activities of which affect interest or foreign commerce. Additionally, the plaintiff must also adequately allege the violation before invoking RICO's civil remedies. *Daddona v. Guadio 156 F.Supp.2d 153, 159-*

*160 (D. Conn., 2000), Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2nd Cir. 1983).*

The plaintiffs have failed to show the existence of element (6), the existence of an enterprise, and therefore has not met the requirements of establishing a claim under RICO. The Supreme Court has established that an enterprise cannot simply be "the pattern of racketeering activity" itself, but rather must consist of a separate entity apart from the activity in which it engages. *States v. Turkette, 452 U.S. 576, 583 (1981).* Additionally, the Second Circuit has established that in determining whether a separate enterprise exists, the plaintiff must show that the alleged enterprise would exist in the absence of the predicated facts. *First Capital Assessment, Inc. v. Satinwood, Inc., 385 F.3d 159 (2004).*

The plaintiffs' RICO claim, appropriately viewed in this light, does not have any merit as it fails to establish the existence of an ongoing enterprise separate from the alleged predicate racketeering acts themselves. Therefore, this claim fails under 1962(c) for lack of distinctness.

III.  **PLAINTIFF DOES NOT ESTABLISH THE MANNER IN WHICH THEIR MAIL FRAUD CLAIM SUPPORTS A BASIS FOR RICO LIABILITY**

4

It is established that a violation of the Federal Mail Fraud Statutes can constitute "racketeering activity," and in turn support an allegation by a plaintiff under RICO. The plaintiffs assert that the defendants instituted three mail fraud schemes that would support the allegation of "racketeering activity" against the defendants. However, in each of these alleged schemes, the plaintiffs either cannot identify the documents mailed, or relies on documents or statements not sent through the U.S. Postal Service. The Second Circuit has held that, "allegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent". *Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2nd Cir. 1993)*. The plaintiffs have failed not only to identify the alleged fraudulent documents they received by mail, but also to explain how the use of the postal system furthered the schemes and led to the proximate damages.

### A.    PURCHASE PRICE FRAUD SCHEME

The plaintiffs allege that Mr. Picard sent misrepresentations to them via U.S. mail that would constitute a Purchase Price Fraud Scheme. However, the two components of the alleged fraud were not proximately caused by any

document sent through the mail. The claimed misrepresentation was allegedly made in an in-person meeting between Mr. Egbarin and Mr. Picard, as well as the mutual signing of the mortgage and promissory note. Regardless, this alleged use of the U.S. Mail could only be incidental and could not be the cause of any of the damages suffered by the plaintiffs as a result of the alleged "scheme."

### B. COLLECTION FRAUD SCHEME

The plaintiffs also claim that the defendants used mail fraud in order to achieve a judgment in the defendants' favor regarding a $30,000.00 note of which the plaintiffs were in default. This stems from two previous actions filed, a foreclosure action in Hartford Superior Court and an action on the note filed in the New Britain Superior Court. The plaintiffs, in their Opposition to Summary Judgment, refer to false affidavits and statements in both of these actions. Any statements made during the foreclosure action, regardless of their alleged falsity are meaningless because the action itself was abandoned and resulted in no damages to the plaintiffs or judgments against them. The mail fraud claimed by the plaintiffs in the action in New Britain Superior Court for collection of the note also have no merit because the allegedly false pleadings made by the defendants before the court that the plaintiffs base

6

their claim of mail fraud are not considered predicate acts of mail fraud for purposes of establishing a RICO claim. *Daddona v. Gaudio 156 F.Supp.2d 153* (D. Conn., 2000). It is clear that courts have not allowed claims of mail fraud for the filing of false pleadings, even when plaintiffs received judgment in their favor in underlying actions. *Auburn Medical Center, 9 F.Supp.2d at 1297*. In this instance, the plaintiffs have not prevailed in the underlying action, and is attempting to re-litigate these issues through the use of mail fraud claims in an effort to establish a claim under RICO.

    **C.**    **RETALIATORY GREIVANCE SCHEME**

As mentioned above, in order to prevail on an argument of mail fraud, the plaintiffs must allege the placement of fraudulent documents into the United States Postal Service. Instead, the plaintiffs proffer an argument alleging misrepresentations made in court proceedings. In no way does this meet the criteria for a mail fraud scheme. Rather, it is clear that the plaintiffs are attempting to re-litigate an issue that they had lost before. When the Court considers the principles of collateral estoppel and the facts and determinations of *Daddona v. Gaudio*, 156 F. Supp.2d 153, (D. Conn., 2000), in the shadow of the circumstances surrounding this case, it becomes clear that the plaintiffs are baldly attempting to avail themselves of judicial

procedural protections that they do not deserve. As such, summary judgment is appropriate.

### III.   WIRE FRAUD SCHEME

The plaintiff's arguments relating to a wire fraud scheme are directly based on the arguments for mail fraud. Therefore, the wire fraud scheme claims fail for the same reasons the mail fraud scheme claims fail as outlined above in Section II.

### IV.   BANK FRAUD SCHEME

The bank fraud statute does not apply to the facts asserted by the plaintiffs. The plaintiffs' claim centers on alleged damages resulting from the second mortgage for $30,000.00.  However, the bank's involvement in this case was limited to the mortgage for $270,000.00. In other words, the bank had no involvement in the second mortgage and the bank fraud statute is therefore, inapplicable. 18 U.S.C.A. § 1344. Furthermore, if the plaintiffs intend to argue that the bank suffered damages as a result of the second mortgage, then the plaintiffs are without standing.

## V.     OBSTRUCTION OF JUSTICE

The plaintiffs' argument relating to obstruction of justice is founded on a misstatement of the law. The federal obstruction of justice statute does not apply to actions taken in state court proceedings. *O'Malley v. New York City Transit Authority*, 896 F.2d 704 (2d Cir. 1990). Yet still, the plaintiffs base their argument of obstruction of justice on the defendant's conduct in the state court collection action. Furthermore, the RICO statute does not provide for a claim involving an alleged obstruction of justice under Connecticut law. 18 U.S.C. §1961(1)(A). Therefore, the plaintiffs' argument regarding obstruction of justice should fail.

## VI.    PLAINTIFF'S NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

The plaintiffs' claims of a negligent and intentional infliction of emotional address, tortuous interference with business, and CUTPA all stem from the defendants' successful prosecution of a collection action and the filing of a grievance petition that resulted in the plaintiff's disbarment. Under *Blake v. Levy*, 191 Conn. 257 (1983), the plaintiffs cannot bring a claim for damages that result from legal proceedings that were not decided in their

favor. There is no Connecticut case law that would allow a plaintiff to sue under such circumstances for any of these claims. Therefore, the plaintiffs' claims regarding negligent and intentional infliction of emotional distress, tortuous interference with business, and CUTPA should all fail.

### VII.    CONCLUSION

In sum, summary judgment should enter against the plaintiffs and in favor of Claude and Pauline Picard. This is so because there is no genuine issue as to any material fact upon which the Picards' motion is based and they are entitled to judgment as a matter of law. It is respectfully submitted that summary judgment should enter for the defendants forthwith.

THE DEFENDANTS:
CLAUDE J. PICARD AND
PAULINE M. PICARD


By: _____
   JOSEPH V. MEANEY, JR.
Cranmore, FitzGerald & Meaney
   49 Wethersfield Avenue
      Hartford, CT 06114
         860-522-9100

## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed, first-class mail, postage pre-paid, on this 24th day of June, 2005.

Nitor V. Egbarin and
Janet J. Egbarin
P.O. Box 230421
Hartford, CT 06123-0421

Nitor V. Egbarin and
Janet J. Egbarin
28 Ely Place
Simsbury, CT 06070

Thomas J. Hagarty, Esq.
Halloran & Sage
Goodwin Square
Hartford, CT 06103

BY:_____
    JOSEPH V. MEANEY, JR.
    Cranmore, FitzGerald & Meaney

12