**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

*FILED*

2005 AUG 25 P 4: 38

U.S. DISTRICT COURT
HARTFORD, CONN.

NITOR V. EGBARIN,                       :  CASE NO. 3:00 CV 01043 (JCH)
AND JANET J. EGBARIN                    :
                           Plaintiffs,  :
v.                                      :
                                        :
LEWIS, LEWIS & FERRARO LLC,             :
SCOTT F. LEWIS, CLAUDE J. PICARD        :
AND PAULINE M. PICARD                   :
                                        :
                           Defendants.  :      JUNE 29, 2005
                                        :

**PLAINTIFFS'S SURREPLY TO DEFENDANTS' REPLY TO**
**PLANTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**MOTION FOR SUMMARY JUDGMENT**

The plaintiffs, Nitor V. Egbarin and Janet J. Egbarin, hereby submit this Surreply to the issues raised by the defendants' Reply (Doc 64 & Doc 65), entered on June 24, 2005 and June 28, 2005 respectively, to Plaintiffs' Memorandum of Law in opposition to defendants' motion for Summary Judgment.

### I. An Enterprise Exists in this RICO Claim.

The defendant, Scott Lewis individually and using his law firm, the defendant, Lewis, Lewis & Ferraro, LLC and, along with his clients, Mr. Claude Picard and Mrs. Pauline Picard, associated together to develop, lease and sell the subject property at 8 Northcliff Drive Bloomfield, Connecticut. See Ex. 1, ¶ 3; Amended Complt at ¶¶ 30-34 and; corrected Ex. 3 at P. 53, attached herewith.

These facts clearly show a discrete economic association which exists separately from the association's

racketeering activities described on page 16 of plaintiffs'
Memorandum of Law. See, <u>United States v. Anderson</u>, 626 F.2d
1358, 1372 (8th Cir. 1980), cited in <u>First Capital Asset
Management v. Satinwood, Inc.</u>, 385 F. 3d 159, 173 (2nd Cir.
2004), where the Second Circuit said, "[i]n perhaps its
least developed form, an enterprise may be found where
there is simply a 'discrete economic association existing
separately from the racketeering activity.'" Id.

The Second Circuit "further requires that a nexus
exist between the enterprise and the racketeering activity
that is being conducted [,]" "[a]nd for an association to
constitute an enterprise, the individuals must share a
common purpose to engage in a particular fraudulent course
of conduct and work together to achieve such purpose." Id
at P. 174. (Citation omitted).

These other requirements are what the plaintiffs
described in their Memorandum of Law at PP 16-17, which the
defendants have partially quoted in their Reply Brief at P.
1.

Also, the plaintiffs Amended Complaint, ¶¶ 103-139,
specifies how the defendants "joined together as a group to
perpetrate the frauds," and further specifies the
"continuity of the structure or personnel" of the
enterprise. See, <u>First Nationwide Bank v. Gelt Funding
Corp.</u>, 820 F. Supp. 89, 98, cited in <u>Satinwood</u>, 385 F. 3d
at 174, which the defendants base their second argument in
their Reply Brief at P. 2. The association of these
defendants would have existed and, in fact, did and
continued to exist, if the predicates were removed from the
equation. In addition, the personnel of the defendants,
Lewis, Lewis & Ferraro, LLC participated and were used in
the operation of the enterprise.

2

The record of this case, as described here and more
fully in the plaintiffs' Memorandum of Law, clearly show
that an enterprise exists which is separate and distinct
from the racketeering activities of the group and also show
that the group shared a common purpose and worked together
to achieve this purpose.

## II. Mail Fraud and Wire Fraud have been established in this RICO Claim.

Defendants appear to misapprehend the law relating to
the use of the mail in furtherance of a mail fraud scheme
under RICO.

Mail fraud is committed when the mails are used as part
of a scheme or artifice to defraud. Landry v Air Line
Pilots Ass'n, 901 F.2d 404, 428 (5th Cir. 1990), citing
United States v. Margiotta, 688 F.2d 108, 121 (2d Cir.
1982).

A plaintiff in a RICO case need not show that each
defendant personally used the mails or long distance wire
communications in connection with the execution of the
overall fraudulent scheme. See United States v.
Zichettello, 208 F.3d 72, 105-06 (2d Cir. 2000);
Constellation Bank, N.A. v. C.L.A. Management Co., 1995 WL
42285 at *4 (S.D.N.Y. Feb 1, 1995); Morrow v. Black, 742
F.Supp. 1199, 1203-04 (E.D.N.Y.1990); Center Cadillac v.
Bank Leumi Trust Company of New York, 808 F.Supp. 213, 228
(S.D.N.Y. 1992); 131 Main Street Associates v. Manko, et
al., 897 F.Supp. 1507, 1530 (S.D.N.Y. 1995).

The Plaintiffs' Ex. 1, ¶¶ 25, 26, 30, 33, 36, 39, 40-46
& 51; Ex. 3, PP. 152-153; Pls' 56(a) 2 Statement, ¶¶ 19,
22, 23 & 24 and; the undisputed allegations in the Second
Amended Complaint, show numerous instances whereby Scott

3

Lewis and the other defendants used the United States mails in furtherance of the three schemes in this matter.

In addition, for a mail fraud or wire fraud claim, a RICO plaintiff need only allege the connection of the defendant to the overall fraudulent scheme which, during some part thereof, involves the use of the mail or long distance wire communications. Zichettello, 208 F.3d at 105-06. In fact, if one participant in a fraudulent scheme "causes" the use of the mail or interstate telephone wires in the execution of the fraudulent scheme, all other knowing participants in the scheme are legally liable for the use of the mail or the interstate wires. Id.

A defendant "causes" a use of the mail or wires when that defendant does an act knowing that the use of the mail or wires will follow in the ordinary course of business, or if the defendant reasonably could foresee that the use of the mail or wires would follow, even if the defendant did not actually intend for the use of the mail or wires to follow. Id. See, also, United States v. Amrep Corp., 560 F.2d 539, 545 (2d Cir.1977); United V. Jones, 648 F. Supp. 225, 235 & n. 8, (S.D.N.Y. 1996).

**A. Purchase-Price-Fraud Scheme.**

The Lewis defendants argue that Plaintiffs have not proved their mail fraud allegations because there is no claim that the Lewis defendants were involved in the claimed misrepresentation made by Mr. Picard to Mr. Egbarin and that the claimed misrepresentation was not made through the mail. This argument is erroneous. See, cases cited above. Lewis defendants were part of the enterprise and are liable for the enterprise' misrepresentations.

4

Also, the plaintiffs do not need to show that a mailing in furtherance of an overall fraudulent scheme itself contained a misrepresentation.

To establish mail fraud or a wire fraud, a Plaintiff need not show that the mailing or interstate wire communications, in and of themselves, contained any misrepresentations, See Carpenter v. United States, 484 U.S. 19, 27 (1987); Baisch v. Gallina, 346 F.3d 366, 374 (2d Cir. 2003); Cadle Co. v. Schultz, 779 F.Supp. 392, 400 (N. D. Tex 1991) (citing cases at n. 50), instead, all that is necessary is that the mail or interstate telephone lines be a part of the execution of the overall fraudulent scheme. See Schmuck v. United States, 489 U.S. 705, 710-12 (1989); see, also, United States v. Finney, 714 F.2d 420, 423 (5th Cir.1983); United States v. Green, 494 F.2d 820, 823-24 (5th Cir.1974); Sun Savings, 825 F.2d at 196.

Even "'innocent' mailings -- ones that contain no false information -- may supply the mailing element." Schmuck, 489 U.S. at 715.

In any case, whether the Defendants' use of the mail and interstate wires was part of an overall fraudulent scheme" is a question of fact which is not appropriate for resolution before trial." R.A.G.S. Couture, 774 F.2d at 1354-55. See, also, United States v. Lane 474 U.S. 438, 452-53 (1986); United States v. Tony 598 F.2d 1349, 1353-54 (5th Cir.1979).

The Lewis defendants, however, have conceded that "there was some incidental use of the U. S mails in this so called scheme," but it could not be considered the proximate cause of any damages. See, Lewis defendants Reply Brief at P. 4. The plaintiffs refer the defendants to n. 4

of the plaintiffs' Memorandum of Law in respect of this side issue of proximate cause.

Contrary to the defendants' claim that the issue of the HUD-1 is a "total red herring," the fact is that the HUD-1 document is part of the proof of the defendants' fraud, which fraud would otherwise have remained covert, an area the defendants would prefer to remain. The defendants' violation of 18 U.S.C § 1001 is established by the HUD-1. See, U.S. v. Kingston, 971 F. 481, 489 (10th Cir. 1992). Scott Lewis' misrepresentations in court are also established by the HUD-1. The HUD-1 is clearly at the center of the defendants' purchase-price-fraud scheme. See, e.g., the Expert opinion of Laura Borrelli, Ex. 2, P. 4 and Ex. 4, PP. 31-32,40 & 45 and, the bank attorney's sworn statements, Ex. 6, PP. 22, 44-48, 67-69 & 96-97.

Finally, contrary to the defendants' claim that the bank was indifferent to the note and mortgage, the bank was clear that it did not want to hear of the note and mortgage for $30,000 and the bank's attorney was clear when he stated under oath that the bank did not permit the note and mortgage for $30,000 and which note and mortgage were not required for the closing of the sale of the subject property. See Ex. 6 PP. 9, 36, 38-39, 44-45 & 96-97.

The bank clearly did not permit the note and mortgage for $30,000 for the closing transaction and Lewis' conduct confirms this because Lewis hid the note and mortgage from the bank. See Ex. 6, pp. 28-30, 34-39, 47, 50 & 70-71; Ex. 2, P. 4. But Scott Lewis later told the courts he gave these instruments to the bank. The evidence described in this paragraph, confirms that Scott Lewis lied to the courts when he said he gave these instruments to the bank.

6

## B. Collection-fraud Scheme.

Firstly, the Lewis defendants erroneously stated that the Hon. Judge Hall decided the case Daddona v. Gaudio, 156 F. Supp 153 (JBA, 2000).

Secondly, that case is not similar to this case and it is clearly inapposite. Moreover, the case United States v. Eisen, 974 F.2d 246, 251-54, (2d Cir. 1992), cited in the Daddona case, is a better analogy and supports the plaintiffs' RICO claim in that the filing of false pleadings in a civil action can be considered predicate acts of mail fraud for purposes of a RICO claim, where, as are present in this case, there are additional allegations of some other pattern of racketeering activity. See also, The Cadle Company v. Flanagan, No. 3:01-Cv-531 (AVC) (D. Conn. May 2, 2005), (a copy is attached to the Plaintiffs' Memorandum of Law), where false pleadings and misrepresentation to court were considered predicate acts of mail fraud for purposes of a RICO claim.

## C. Retaliatory Grievance Scheme.

The defendants have overlooked the fact that Lewis himself sent papers in the U.S. Mail to the grievance committee when he filed false grievance charges against Mr. Egbarin. In addition documents were sent to Mr. Egbarin in the U.S Mail and then were sent by Mr. Egbarin in the U.S. Mail in this scheme. In addition, the courts and the grievance committee sent information in the U.S Mail to Mr. Egbarin and to Scott Lewis. See, cases mentioned above regarding the use of the mail in furtherance of a mail fraud scheme.

7

### III. Wire Fraud.

The defendants have also overlooked the fact that the record indicates that the New Britain court sent interstate wire communication to out-of-state banks where the plaintiffs maintained accounts for the purpose of freezing those accounts under the collection fraud scheme. See, Ex. 1, ¶ 42 and; Ex. 27.

### IV. Bank Fraud

Defendants have again ignored the facts of this case. The basis for plaintiffs' damages under this RICO claim stems from the defendants' pattern of racketeering activity, which includes the predicate act of bank fraud. See n. 4, Plaintiffs' Memorandum of Law.

In addition, the note and mortgage for $30,000 were one of the fraudulent instruments devised to circumvent the bank appraisal value of the subject property and were thus involved in victimizing the plaintiffs and the bank. See e.g., the Expert opinion of Laura Borrelli, Ex. 2, P. 4; Ex. 4, PP. 31-32, 40 & 45 and;, the bank attorney's sworn statements, Ex. 6, PP. 22, 44-48, 67-69 & 96-97.

The plaintiffs are victims of this bank fraud because the defendants illegally imposed the additional debt of $30,000 by way of the note and mortgage on the plaintiffs. The bank obviously sustained an increase in the risk of default of its original loan as a result of the illegal increase in the debt load of the plaintiffs. Ex. 4, PP. 44-49.

The plaintiffs thus have standing as one of the targets of the bank fraud, and along with the bank, sustained substantial losses from this bank fraud. See, Ex. 1, ¶ 51 and; Ex. 45.

8

## V. Obstruction of Justice.

The case which defendants exclusively base their challenge of this predicate act, <u>O'Malley v. New York City Transit Authority</u>, 896 F.2d 704, (2d Cir. 1990), does not apply here. The <u>O'Malley</u> case involves a different section of 18 U.S.C § 1503.

## VI. FDCPA

The Lewis defendants concede here that they did not properly read the plaintiffs' FDCA claim which is based on the violations of 15 U. S. C § 1692e and U. S. C § 1692d(2). <u>See</u>, Amended Complt., ¶¶ 151 and 152. Also, plaintiffs' assertions in respect of these violations are not new.

The Lewis defendants are also plainly wrong in newly claiming that the FDCPA does not apply to the defendants' abusive and deceptive collection practices because they claim the FDCPA interferes with state rights.

Sections 1692e and 1692d(2) are intended to specifically deal with the misbehavior and abuse that have been described in this case. See, the Legislative History for Sections 1692e and 1692d(2).

In fact, it has been determined that it is abusive under section 1692d(2), for a debt collector to use racial stereotypes, belligerent threats, words like "liar," "deadbeat," "crook," and "threats that credit will be ruined." See <u>United States v. Central Adjustment Bureau, Inc.</u>, 667 F. Supp. 370 (N. D. Tex. 1986), aff'd per curiam, 823 F. 2d 880 (5th Cir. 1987).

Similarly, as part of their collection strategy in this case, the Lewis defendants, said in open court they wanted to "teach [Mr. Egbarin] a Lesson;" told the court that Mr. Egbarin was engaged in "money laundering;" threatened to report Mr.

9

Egbarin to the bar; filed false grievance charges based on hearsay against Mr. Egbarin and; told Mr. Egbarin, an African American, they were going to teach him a lesson and put him in his place. See, Ex. 1. ¶49; Pls' 56(a)2 Statement, ¶ 33.

Furthermore, FDCPA also clearly prohibits a debt collector from the use of false statements in collecting a debt. See, e.g. <u>Jenkins v. Heintz</u>, 124 F.3d 824 (7th Cir. 1977), cert den. 523 U. S. 1022 (1998).

In addition, FDCPA clearly prohibits the nondisclosure of material information in collecting a debt. See e.g., <u>Tashof v. FTC</u> 437 F.2d 707 (D.C. Cir. 1970); <u>Bice v. Merchants Adjustment Service, Clearinghouse</u>, Docket No. 41,265 (S. D. Ala. 1985).

Similarly, in this case, the Lewis defendants used false statements, submitted false documents and failed to disclose material information, in obtaining several orders including the order suspending Mr. Egbarin's law license. See, Ex. 1. ¶50; Pls' 56(a)2 Statement, ¶ 35.

Finally, plaintiffs have established that this FDCPA claim was timely filed within one year of the violation Sections 1692e and 1692d(2) of the FDCPA.

## VII. Negligent and Intentional Infliction of Emotional Distress.

The above analysis is incorporated here as well. The plaintiffs' theory of liability in this emotional distress claim[1] is based on the defendants' misconduct that have been detailed in the plaintiffs' Memorandum of Law and in this Surreply Brief.

---

[1] The Picard defendants challenge plaintiffs' CUTPA claims under this emotional distress claim. The record clearly establishes the violation of CUTPA. The plaintiffs hereby supplement their Memorandum of Law by stating here that the Lewis defendants were engaged in bill collection of the note and mortgage as well as the Lewis defendants' attorneys' fees under the note and mortgage. See, Ex. 1, ¶49.

The defendants cannot rely, as a defense to this claim, on the judgments they procured by false statements, submitting false documents and the non-disclose material information. The defendants' liability hereunder is based on these egregious misconducts which inflicted emotional distress. For example, the defendants began and executed the campaign to assassinate Mr. Egbarin's character and to teach Mr. Egbarin a lesson by destroying the plaintiffs' business and taking the plaintiffs' house at 8 Northcliff Drive. See, e. g., Ex. 1. ¶49 & ¶50; Pls' 56(a)2 Statement, ¶ 33 & ¶ 35.

THE PLAINTIFFS

BY _____
Nitor V. Egbarin, pro se
28 Ely Place
Simsbury, CT  06070
Tel.: (860) 680-1448

BY _____
Janet J. Egbarin, pro se
28 Ely Place
Simsbury, CT  06070
Tel.: (860) 680-1448

11

CERTIFICATION

This is to certify that a copy of the foregoing was on the above date mailed postage prepaid to all counsel of record as follows:

Thomas J. Hagarty, Jr.
Halloran & Sage LLP
One Goodwin Square
Hartford, CT 06103

Laura Pascale Zaino
Halloran & Sage LLP
One Goodwin Square
Hartford, CT 06103

Joseph V. Meaney, Jr.
Cranmore, FitzGerald & Meaney
49 Wethersfield Avenue
Hartford, CT 06114

By _____
    Nitor V. Egbarin