UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

NITOR V. EGBARIN,
AND JANET J. EGBARIN
: CASE NO. 3:00 CV 01043 (JCH)
                    Plaintiffs,
v.

LEWIS, LEWIS & FERRARO LLC,
SCOTT F. LEWIS, CLAUDE J. PICARD
AND PAULINE M. PICARD

                    Defendants.   :   February 4, 2006

## PLAINTIFFS'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERARION OF RULING REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I. BRIEF DESCRIPTION OF CASE

This case arises from a real estate closing transaction on May 31, 1994, between the plaintiffs as buyers, the defendants, Mr. and Mrs. Picard, as sellers and the other defendants as the sellers' attorneys in the transaction, for the sale of 8 Northcliff drive, Bloomfield, Connecticut.

On June 7, 2000, the plaintiffs filed a complaint in the district court for the redress of certain wrongs under the Racketeering Influenced and Corrupt Organization Act, 18 U.S.C. § 1962 (c), Fair Debt Collection Practices Act 15 U.S.C. § 1692d(2) and U.S.C. § 1692e and under several state causes of action.

1

More pertinent to this motion, the complaint alleges that the defendant, Scott Lewis individually and using his law firm, the defendant, Lewis, Lewis & Ferraro, LLC and, along with his clients, Mr. Claude Picard and Mrs. Pauline Picard, associated together to develop, lease and sell the subject property at 8 Northcliff Drive Bloomfield, Connecticut. See Ex. 1, ¶ 3; Amended Complt at ¶¶ 30-34.

Also, the plaintiffs Amended Complaint, ¶¶ 103-139, specifies how the defendants "joined together as a group to perpetrate the frauds."

The defendants filed a motion for summary judgment which was granted by the court in the ruling dated January 30, 2006.

## II. LAW AND ARGUMENT

The plaintiffs now file this motion for reconsideration on the grounds that the court, through no fault on its part, has overlooked matters or controlling decisions which might have materially influenced the ruling on January 30, 2006 granting the defendants' motion for summary judgment.

The plaintiffs concede here that their briefs in opposition to the defendants' motion for summary judgment were in some respects deficient in marshaling sufficient argument for

2

the plaintiffs' cause, particularly as to the matters addressed herein.

The plaintiffs respectfully state that there is sufficient evidence in the record that was overlooked, and is further reviewed below, which might have materially influenced the ruling on the defendants' motion for summary judgment.

A motion for reconsideration is strict and the second circuit has held that a motion for reconsideration generally will be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court. In re BDC 56 LLC, 330 F. 3d 111, 123 (2d Cir. 2003); Shrader v. CSX Transp., Inc., 70 F. 3d 255, 257 (2d Cir. 1995)(citations omitted).

A motion for reconsideration will be granted only where the court has overlooked matters or controlling decisions which might have materially influenced the earlier decision. Motor Vehicle MFRS. V. N.Y.S dept. of Env. Cons. 831 F. Supp. 57, 60 (N.D.N.Y. 1993) aff'd in part, rev'd in part on other grounds 17 F. 3d 521 (2d. Cir. 1994).

3

1. **The Factual Evidence in the Record Supports the Existence of Enterprise in this RICO Claim.**

The record contains the following evidence which was not particularly elaborated[1] in the plaintiffs' arguments:

The defendant Scott Lewis is an attorney at law and he and his law firm, Lewis, Lewis & Ferraro, LLC, the corporate defendant in this matter, primarily provide real estate legal services to their customers. See **Ex. 3, Lewis Dep. Trans, pp. 25-28, 30-40.**

The defendant Claude J. Picard and his wife, the defendant, Pauline M. Picard are real estate developers, landlords and sellers and, do business as sole proprietors and through a corporate entity, C.J. Picard Construction Company. See, **Ex. 1, ¶ 3 and ¶ 7.**

The defendant, Scott Lewis individually and using his law firm, the defendant, Lewis, Lewis & Ferraro, LLC and, along with his clients, Mr. Claude Picard and Mrs. Pauline Picard, associated together to develop, lease and sell the subject property at 8 Northcliff Drive Bloomfield, Connecticut. See **Ex. 1, ¶ 3; Amended Complt at ¶¶ 30-34** and; **corrected Ex. 3 at P. 53.**

---

[1] The plaintiffs brief elaborated on the "common purpose" and the activities of each defendant "working together to achieve" their common purpose. See, Pls' Memo. of Law, p. 17. Plaintiffs only description of "enterprise" is found in Pls' Memo. of Law, p. 16, first sentence, second paragraph.

4

The plaintiffs Amended Complaint, ¶¶ 103-139, specifies how the defendants "joined together as a group to perpetrate the frauds."

In spite of this evidence in the record, the plaintiffs[2] did not describe with precision, the enterprise (see n 1, herein) that exists in this case, thus causing the court to overlook the foregoing evidence.

A RICO "enterprise" is defined to include "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity. 18 U.S.C.A. §1961(4).

The plaintiffs hereby clarify that the foregoing evidence establishes the existence of (1) The Lewis Attorneys-at-Law Practice Enterprise, (2) The Picard Real Estate Business Enterprise, and (3) The association of Lewis, Lewis & Ferraro, LLC and C. J. Picard Construction, Inc., "Lewis-Picard Group Enterprise."

---

[2] Plaintiffs' respectfully submit that they are pro se parties and that even lawyers who have enjoyed more than 30 years of uninterrupted law practice sometimes err and fail to marshal evidence in the record in support of their case. Cf, Cadle v. Flanagan, No. 3:01-CV-531(AVC), at PP 24-25, (D. Conn.)(Plaintiffs allowed to amend their response after Covello, J., on March 28, 2005, granted summary judgment in favor of defendants). Accordingly and for the reasons stated above, plaintiffs request this court to grant this motion for reconsideration and reverse its ruling regarding the defendants' motion for summary judgment.

## A. The Lewis Attorneys-at-Law Practice Enterprise.

This enterprise consists of the corporate defendant, Lewis, Lewis & Ferraro, LLC and attorney Scott F. Lewis. This enterprise is an ongoing organization in that the corporate defendant exists beyond the racketeering activities enumerated in plaintiffs' Memorandum of Law at p. 17. The hierarchy of this enterprise consists of a boss, Scott F. Lewis who is a named and managing partner of this organization.

This organization has other members who function as a continuing unit such as attorney Mark Ferraro and at least one other personnel who perform various paralegal and clerical functions. **See, Ex. 3, Lewis Dep. Trans, p. 150, L.14; P. 180, LL 3-5.See also, Ex. 13** and **Ex. 15,**(showing the signatures of Mark Ferraro and Linda Boatwin). This enterprise provides professional legal services.

The defendants, Scott Lewis, Claude J. Picard and Pauline M. Picard, who are the RICO persons under this enterprise liability, participated in the conduct of this Lewis Attorneys-at-Law Practice enterprise through their described racketeering activities. See, Pls' Memo. of Law, p. 17.

6

The plaintiffs respectfully submit that the characterization here and the foregoing evidence support the existence of enterprise as defined by the RICO statute and interpreted in the second circuit. First Capital Asset Management Inc. v. Satinwood, Inc, 385 F. 3d 159, 173 (2d Cir. 2004). Also see, Webster v. Omnitrition intern., Inc., 79 F.3d 776, 786, (9th Cir. 1996)(The participation of a corporation in a racketeering scheme is sufficient, of itself, to give the enterprise a structure separate from the racketeering activity: 'corporate entities have a legal existence separate from their participation in the racketeering, and the very existence of a corporation meets the requirement for a separate structure).

## B. The Picard Real Estate Business Enterprise.

This enterprise consists of C.J Picard construction Inc., and its proprietors, Claude J. Picard and Pauline M. Picard. This enterprise is an ongoing organization in that the C. J. Picard Construction, Inc., exists beyond the racketeering activities enumerated in plaintiffs' Memorandum of Law at p. 17.

The hierarchy of this enterprise consists of the boss, Claude J. Picard, builder and contractor for the real estate property in this matter. **See, Ex. 1, ¶ 3 and ¶ 7** and, Pauline M.

7

Picard who sold (see, e. g., **Exs. 15, 16, 18)**, the property constructed by Mr. Picard and C. J. Construction, Inc. Other construction personnel were involved in the construction of the real estate. This Picard enterprise develops, build, lease and sell real estate properties. **See, Ex. 1, ¶ 3 and ¶ 7.**

The defendants Lewis, Lewis & Ferraro, LLC and Scott F. Lewis, Mr. Picar and Mrs Picard, who are the RICO persons under this enterprise liability, participated in the conduct of this Picard Real Estate Business Enterprise through their described racketeering activities. See, Pls' Memo. of Law, p. 17.

## C. The Lewis-Picard Group Enterprise.

This enterprise consists of the combination of Lewis, Lewis & Ferraro, LLC and C.J. Picard Construction Inc. A group of corporations can be an 'enterprise' within the meaning of RICO. United States v. Huber, 603 F.2d 387, 393-394 (2d Cir. 1979); See also, C.A. Westel De Venezuela v. American Telephone & Telegraph Co., No. 90 Civ. 6665, 1994 U.S. Dist. Lexis. 14481 at 13-15 (S.D.N.Y. Oct 11, 1994).

This association involved one member providing the legal expertise and services and the other member providing the expertise in real estate development, lease and sales for the purpose of developing and subsequently leasing and or selling

8

real estate to third parties. This association began long before the described racketeering activities took place. See, **corrected Ex. 3 at P. 53.** This association consists of ongoing organization with associates functioning as a continuing unit. Each member through each member's personnel continues to provide its expertise to the association and for the members' common purpose of developing, leasing and or selling real estate to third parties.

The defendants, Scott F. Lewis, Lewis, Lewis & Ferraro, LLC, Claude J. Picard and Pauline M. Picard, who are the RICO persons under this enterprise liability, participated in the conduct of this Lewis-Picard Group enterprise through their described racketeering activities. See, Pls' Memo. of Law, p. 17. An entity can be both a RICO person and one of the members of the RICO enterprise. Cullen v. Margiotta, 811 F.2d 698 (2d Cir. 1987).

In spite of this court's reference to West 79th Street Corp. v. Congregation Kahl Minchas Chinuch, No. 03-civ-8606RWS, 2004 WL 2187069 at *14 (S.D.N.Y. Sept 29, 2004), for the court's conclusion that "the 'hierarchy, organization and activities' of the alleged enterprise constituted a professional service relationship of the type that does not typically give rise to RICO liability," Court Ruling, Doc. #71 at P.16, the second

9

Circuit has not absolved attorneys of RICO liability simply because of their professional service relationship or attorney-client professional relationship. Cf, <u>Azrielli v. Cohen Law Offices</u> 21 F.3d at 512 (2nd Cir. 1994).

In <u>Azrielli,</u> third party RICO victims sued the attorney and his clients in respect of a real estate transaction between the third party and the attorney's clients. The second Circuit in <u>Azrielli</u>, absolved the attorney from RICO liability where there was no evidence that the attorney, who provided professional legal services to the sellers of the real estate, participated in the management or direction of the RICO enterprise. <u>Azrielli v. Cohen Law Offices</u> 21 F.3d at 523 (2nd Cir. 1994).

The second circuit did not absolve the attorney of RICO liability simply because of his attorney-client professional service relationship.

Unlike the <u>Azrielli</u> case, there is evidence in this case of the Lewis defendants' "activities" that establishes the participation of the Lewis defendants in the RICO enterprise.

Furthermore, the Lewis defendants did not "merely render services" to the RICO enterprise. This court concluded that "there is a genuine factual dispute at least as to whether the $30,000 loan was properly disclosed to [the mortgage

10

lender]." Court Ruling, Doc. #71 at P.12. Thus, by this fact,
the Lewis defendants were not "merely rendering services" but
were implicated in the RICO crimes of mail fraud, bank fraud,
wire fraud and obstruction of justice.

Similarly, the evidence of the Picard defendants'
"activities" establishes the participation of the Picard
defendants in the RICO enterprise.

Accordingly and for the reasons stated above,
plaintiffs request this court to grant this motion for
reconsideration and reverse its ruling regarding the defendants'
motion for summary judgment.

## 2. The Factual Evidence in the Record Supports a Claim under the FDCPA.

The plaintiffs respectfully submit that the
sufficiency of evidence of the November 2000 communication was
never challenged by the defendants and were thus not briefed by
the plaintiffs[3].

As pointed out in plaintiffs brief, Pls. Memo of Law
p. 14, plaintiffs are only required at this summary judgment
stage, to come forward with evidence as to the facts
specifically challenged by defendants. See Celotex Corp. v.

---

[3] Nevertheless, the plaintiff respectfully submit that the undisputed evidence of that November 2000
communication, coupled with the other described pre-existing facts which are fully detailed in the record,
sufficiently support a reasonable conclusion that the plaintiffs were subjected to harassment as of November 2000.

Catrett, 477 U.S. 317, 327 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 160-61 (1970); Amaker, 274 F.3d at 681; Reed, 312 F.3d at 1194-95.

### 3. The court should exercise supplemental jurisdiction over the state law claims.

The plaintiffs respectfully submit that the court should exercise jurisdiction over the state law claims where the federal claims are eliminated. See, Purgess v. Sharrock, 33 F. 3d 134, (2d Cir. 1994)(Where the second circuit held that the district court did not abuse its discretion by exercising supplemental jurisdiction after the dismissal of federal claims).

In Sharrock case, when the court determined at the end of the defendants' case, to dismiss plaintiff's last federal claim, the court ruled and the second circuit affirmed, that there were no compelling reasons at that point to prevent a final determination of the state claims by the jury. The parties and the court had spent years preparing for this trial in federal court; the jury had heard evidence for several days and was ready to begin its deliberation; and it would have been wasteful to subject this case to another full trial before a different tribunal.

12

This case has been ongoing since 2000. The pre-trial phase has been concluded. All that needs to be done is to set a trial date and begin the jury trial phase.

The plaintiffs respectfully submit that it would be wasteful at this late stage to subject this case to a different tribunal. Furthermore, because of the passage of time, these state claims will not survive a statute of limitation challenge in the state court.

## III. CONCLUSION

Accordingly and for the reasons stated above, plaintiffs request this court to grant this motion for reconsideration and reverse its ruling regarding the defendants' motion for summary judgment.


THE PLAINTIFFS

BY _____
Niton V. Egbarin, pro se
28 Ely Place
Simsbury, CT  06070
Tel.: (860) 680-1448

BY _____
Janet J. Egbarin, pro se
28 Ely Place
Simsbury, CT  06070
Tel.: (860) 680-1448

13

**CERTIFICATION**

This is to certify that a copy of the foregoing Plaintiffs' Memorandum of Law in support of Motion for Reconsideration were on the above date mailed postage prepaid to all counsel of record as follows:

Thomas J. Hagarty, Jr.
Halloran & Sage LLP
One Goodwin Square
Hartford, CT 06103

Laura Pascale Zaino
Halloran & Sage LLP
One Goodwin Square
Hartford, CT 06103

Joseph V. Meaney, Jr.
Cranmore, FitzGerald & Meaney
49 Wethersfield Avenue
Hartford, CT 06114

By_____
Nitor V. Egbarin